## JONAS NEWMAN v. NATHANIEL C. STUDLEY.

Defendant in ejectment claimed under a sheriff's deed. Defendant could not produce the deed, but proved, by the records of the circuit court, that the sheriff had acknowledged such a deed, and the fact of the execution, the levy and the sale; and accounted for his failure to produce the deed by swearing it was deposited, many years prior, in the recorder's office at St. Louis, and after diligent search could not now be found. The declarations of the ancestor of the heirs, under whom plaintiff claimed, that the purchaser at sheriff's sale owned the land, were also proved; and that defendant had had possession for 26 years; during all which time, the said ancestor lived in the town where the lot was, and set up no title. Held, that on this testimony a jury might well presume the existence of a deed; and whether a deed had in fact been made or not, title was in defendant.

*G. A. Bird*, counsel for plaintiff:

1. The copy of the deed read in evidence, was no evidence of defendant's title, because there was no proof of the execution of the original—2 Mo. Dec. 148; Strother v. Christy, 2 Peter's Condensed Rep. 28.

2. Because there was no proof of its loss—2 Peter's C. R. 28; ib. 173.

3. Because said deed was never recorded with the recorder of St. Louis county.

4. Because, admitting said deed to have been duly executed and its loss established, the sale to Penrose being a public sale, was not made in pursuance of law, and passed no title.

Under the third point we referred to acts of Mo. of 1804 and 1817, pages 127, 129, 130; and last revised laws, page 123. Decisions were read from New York and Massachusetts, showing that the courts there had held unregistered deeds good against subsequent regis-

tered deeds, if the subsequent purchaser had had actual or implied notice, and that court had established different rules as to what should be notice, and we contended that our statutes had declared that *actual notice* was necessary to establish the validity of the prior unregistered deed against the subsequent registered one.

As to the fourth point, we insisted that the sheriff's sale was made after the act of 3d July, 1807, (in force 1st September, 1807,) was in force; and referred to the act, sects. 62, 63, 71, 72, 73, Geyer's Digest, pages 266, 267, 269.

We insist that the statute repeals all prior laws relating to sale of lands on execution after 1st September, 1807, and that if an execution had been issued before this act took effect, yet that a sale afterwards made, to be good, must be according to the new law. We cited 6 Bac. Abri. 373–4, 378, and many other authorities there referred to.

We insisted that, previous to the act of 1807, the sheriff had no authority to make a deed; and that the sale to Penrose was not made either in conformity to any law or custom of the country, and referred to Mr. Spalding's notes from Febrero.

We insisted that the sale to Penrose, not having been made in pursuance of law, passed no title to him, and referred to 8 Martin N. S. 246; 4 Wheaton, 77; 2 Peter's Law Rep. &c. &c.

We insisted that the confirmation by commissioners was only *prima facie* evidence in any case of title in confirmee; that the grant to Lucas in this case, is no evidence whatever of title in him: 1. Because the confirmation was not made to the *claimant*. 2. Because it was not made in conformity to law, Lucas being neither the possessor of the land in 1803, or his representative, or the claimant, within the meaning of the act of 1807. 3. Because, by the act of 1807, it was not intended that such decision as was made for Lucas, should be final even against the United States. 4. Because only two commissioners made the decision in favor of Lucas, and one of them, Penrose, was interested in the decision —3 Dall. 386, (Slocum v. Simms, &c.) 2 Peter's C. Rep. 279. 5. Because the claim was confirmed on the false representation of the fact that Penrose was assignee of Cailloux; so if Cailloux had the right to the land, he was defrauded, if not, the government was defrauded, and Lucas procured a confirmation in violation of law.

*H. S. Geyer*, counsel for defendant:

The appellee, in support of the judgment, insists:

1. The copy of the deed taken from the books of the recorder of land titles, was competent evidence. It is referred to in the record of the commissioners as containing a description of the lot claimed and granted; it thus becomes a part of the grant, and without it, the grant is imperfect for want of a description of the premises—Story's Laws, vol. 2, p. 967, sec. 4; Rev. Code, p. 251, sec. 8.

2. Before the passage of the act of 21st February, 1825, there was no law requiring a sheriff's deed to be recorded in the recorder's office. And even if, by a strained construction of the registry acts, a sheriff's deed is held to be included, it does not follow that the deed is void because it was not recorded, as assumed in the second refused instruction—Laws of La. p. 7; Geyer's Digest, p. 127–8; Laws of La. p. 117, 118; Geyer's Digest, p. 269; Gilbert v. Burgot, 10 Johns. R. 456; Fosdick v. West, ibid. 466; Bonnel v. Sharp, 9 Johns. 163; 3 Mass. Rep. 573; 4 do. 637; 5, 459; 6 do. 487; 10 do. 60; and 3 Wheaton, 449.

3. The sheriff's deed is operative to pass the title of Louis Cailloux, and the first instruction was therefore properly refused.

4. Even on the supposition that one or both the refused instructions were technically correct, still if the verdict be according to the merits, the motion for a new trial was properly overruled. The court take into consideration how far its misdirection or mistake was material, and will not grant a new trial, if there is good reason to believe that the applicant was not injured by it—De Peyster v. Columbian & Co. 2 C. R. 85; Dole v. Lyon, 10 Johns. Rep. 447.

McGIRK, Judge, delivered the opinion of the court.

On the 13th February, 1836, Newman brought an action of ejectment against Studley for a lot of ground in the city of St. Louis, 120 feet by 150. There was a verdict and judgment for the defendant, Studley, to reverse which the appellant brings the cause here.

By the bill of exceptions, it appears that one Veronique Guitard, in the year 1803, having been in possession of the lot about six years before, sold the same to one Louis Cailloux, but continued to occupy the same till 1808, when she died. It was proved that the mother

of Cailloux lived on said lot until the summer before her death, when Cailloux took her to his house, where she died 3d December, 1808. It was proved that Cailloux died three or four years past; he left a widow who died about a year before the trial of this case; that he left a son who lived with his mother in St. Louis till about the 3d of March, 1835, when the mother died, and that L. Cailloux, the ancestor, left a daughter, who, all this time, lived in St. Louis; that these heirs made a deed in due form of law to the plaintiff for the lot in question, dated in March, 1835. It was also proved that the defendant was in possession of the lot under J. B. C. Lucas, as tenant, at the time of bringing the action.

The defendant then gave in evidence, that on the 14th day of May, 1801, in the general court of Louisiana, one Manuel Lisa, recovered a judgment against said L. Cailloux for about $75, damages and costs, and an execution issued on the same; and that on the 30th day of July, in the same year, execution issued on the same against Cailloux, and that the lot on said execution was sold by the sheriff of St. Louis county or district, on the first Sunday in October, to one C. B. Penrose, for about $125. A supposed copy of a deed made by the sheriff to Penrose, was offered in evidence, objected to, but received by the court. It was also proved that the sheriff, early in 1809, acknowledged a deed in open court to C. B. Penrose for the lot in question. The defendant produced a copy of a confirmation to him by the board of commissioners for the lot in question, made on the 10th of July, 1810. It was also proved that Lucas, under whom defendant claims, had in him all the title to the lot which Penrose acquired by the sheriff's sale, by deed dated 25th March, 1809. It was also proved that, just before the date of the deed from Penrose to Lucas, Cailloux told one John Tayon the property belonged to Penrose, and said Tayon requested Lucas to buy it of Penrose for him, intending to pay Lucas when he could, which Lucas did, and that Tayon immediately went into possession, and that Lucas and his tenants have possessed the same ever since. The possession of Lucas and tenants may be dated as far back as 25th March, 1809.

This constitutes the sum and substance of the evidence of the defendant's title.

The first question to be considered is, whether the court did right in receiving the copy, or supposed copy, of the deed of the sheriff to Penrose, under the certificate of the recorder of land titles? I wish to waive the

decision of this question for the present, being not yet satisfied that under our act of the R. C. of 1835, p. 251, the copy can be received, the other members of the court not yet being unanimous on the point.

I will, however, proceed to show that there was no necessity to give this copy in evidence, as there was enough of evidence to prove the sheriff actually made a deed to Penrose for the lot in 1809. The record of the circuit court shows that early in 1809, Mr. Conner, the sheriff, came into open court and acknowledged a deed, as sheriff, to Mr. Penrose, for the identical lot in question. The law then required the sheriff to acknowledge his deeds in open court. The record of this case also shows us that there was an execution before issued to the sheriff against Cailloux. The acknowledgment states the fact of the execution, the levy and the sale. This is evidence enough to show such deed once existed. The next question is, has the same been lost? Lucas swears he never had the deed—never demanded it of Penrose; that Penrose died several years ago; that he has searched in the office of the recorder, and cannot there find the same. He swears, also, that there was in fact such a deed, and the same was left, in the year 1810 or 1811, with the commissioners of land claims, which is now the recorder's office, and that it cannot be found. In this case, nothing but the production of the deed itself can be more satisfactory that the sheriff did, by execution, sell the land to Penrose in October, 1807, and that he made a deed to him for the land. The record is unusually explicit and satisfactory. Then early in 1809, we see the ancestor of the heirs under whom the plaintiff claims, declaring the fact to be, that Penrose was the purchaser at sheriff's sale; then we find Lucas under Penrose, take by his tenant, John Tayon, immediate possession and continue in possession till the action brought in 1836, February 13th, a period of twenty-six years, and all this time Cailloux was in the place where the lot lay till his death, which happened some four or five years back. Upon this state of things the law will raise a presumption that there was a deed, even against Cailloux, on less testimony than here exists. I will refer to a few cases, and see what has been done in such matters. In part 4th, Starkie's evidence, 12, 27, 28, I find the law to be, that long continued uninterrupted enjoyment, is evidence from which a jury may presume a deed; and in note *l*, there are innumerable cases in which the thing may be done. In this case the court admitted the copy,

JUNE TERM, 1838.

Newman.
v.
Studley.

Def. in ejectment claimed under a sheriff's deed. Def. could not produce the deed, but proved by the records of the cir. court that the sheriff had acknowledged such a deed, and the fact of the execution, the levy and the sale; and accounted for his failure to produce the deed by swearing it was deposited, many years prior, in the recorder's office at St. Louis, and after diligent search could not now be found. The declarations of the ancestor of the heirs, under whom pltf. claimed, that the purchaser at sheriff's sale owned the land, were also proved; and that def. had had possession for 26 years; during all which time, the said ancestor lived in the town where the lot was, and set up no title. Held, that on this testimony, a jury might well presume the existence of a deed; and whether a deed had in fact been made or not, title was in def.

perhaps contrary to law, and perhaps not; and from this copy the jury may have been satisfied of the existence of the sheriff's deed; yet, if the copy had been excluded, according to the wish of the appellant's counsel, it would have been the duty of the jury to find for the defendant. If there had been no evidence at all of any deed whatever, a possession of twenty-five years, under the immediate eye of Cailloux, uninterrupted by him, and connected with the declaration that the lot was not his, would be strong. testimony to prove the right was in Lucas—4th part Starkie, 1227, *passim.* Mr. Bird, of counsel for the appellant, has made some argument regarding the instruction of the court given and refused. The record shows these instructions were not filed. This court can therefore do nothing on that point. Some objection was also made, that the sheriff's deed was not registered according to the registry act of 1804. No point was made in the court below regarding this matter. This court, therefore, will not look into it. The judgment of the circuit court is affirmed, the other judges concurring herein.