MARGARET DINGEE, Appellant, v. MARY KEARNEY et al.,
Respondents.

June 19, 1876.

1. In case of proceedings in the General Court of St. Louis, of date 1806, everything found in the office of the clerk, with the papers, and manifestly relating to the case, is a part of it; and all such papers and entries purporting to prove the record of the cause, though not signed by the presiding judge, are admissible to prove what was done during its progress.

2. After the lapse of seventy years the issuing of necessary process and service will be presumed, to support a judgment of that antiquity.

3. In case of a sheriff's deed, seventy years old, though the record of the deed does not show a seal, yet where the deed has been followed by undisturbed possession a seal will be presumed.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*D. T. Jewett* and *N. Holmes,* for appellant, cited : Reaume *v.* Chambers, 22 Mo. 53 ; Beale *v.* Lynn, 6 Har. & J. 351 ; Ricard *v.* Williams, 7 Wheat. 109 ; Stillman *v.* W. R. Mfg. Co., 3 Woodb. & M. 549 ; Downing *v.* Ford, 9 Dana, 393 ; Crocker *v.* Pendleton, 10 Shep. (Me.) 339 ; Battles *v.* Holley, 6 Greenl. (Me.) 145 ; Mellen *v.* Locks & Canal Co., 17 Pick. 260 ; Karl *v.* Lawrence, 73 Pa. St. 416 ; Brunswick *v.* McKean, 4 Me. 570 ; Ferris *v.* Brown, 3 Barb. 105 ; Warfield *v.* Lindell, 38 Mo. 578 ; 2 Greenl. on Ev., sec. 537 ; Digby's History of the Law of Real Prop. 129 ; Little *v.* Chauvin, 1 Mo. 626 ; Landes *v.* Perkins, 13 Mo. 238 ; Youse *v.* Norcum, 12 Mo. 562 ; Newman *v.* Studley, 15 Mo. 291 ; McNair *v.* Hunt, 5 Mo. 310–312 ; Hepburn *v.* Aull, 5 Cranch, 276 ; Adams *v.* Buchanan, 49 Mo. 71 ; Ryan *v.* Carr, 46 Mo. 483 ; Scruggs *v.* Scruggs, 41 Mo. 242 ; Allen *v.* King, 35 Mo. 225 ; Allen *v.* Moss, 27 Mo. 364 ; 1 Ter. Laws, 120, sec. 47 ; Clark *v.* Hammerle, 27 Mo. 70 ; Hannibal & St. Jo. R. R. Co. *v.* Sawyer, 37 Mo. 263 ; Littleton *v.* Patterson, 32 Mo. 357 ; Wag. Stat. 917, secs. 8, 9 ; Bobb *v.* Woodward, 50 Mo. 103 ; May *v.* Rumney, 1 Mann. (Mich.) 1 ; Practice Act of Oct. 1, sec. 1804,

7 (1 Ter. Laws 56); Acts concerning Courts, of Oct. 1,. 1804, secs. 8–10, 24 (1 Ter. Laws, 60–61); Act of Oct. 1, 1804, sec. 2 (1 Ter. Laws, 65); Act of Oct. 1, 1804, sec. 7 (1 Ter. Laws, 56); Act of Oct. 8, 1806, sec. 5 (1 Ter. Laws, 89); 1 Ter. Laws, 62, secs. 17, 109, 59; Act of Oct. 8, 1806, sec. 2 (1 Ter. Laws, 88, 89); 3 Inst. 173, 1 Greenl. on Ev., secs. 501, 508; Gray v. Davis, 27 Conn. 447; Strong v. Bradley, 13 Vt. 14; Pike v. Crehore, 40 Me. 503, 514; Willard v. Harvey, 24 N. H. 344; Ferguson v. Harwood, 7 Cranch, 412; Fithian v. Monks, 43 Mo. 502; Gibson v. Foster, 2 La. An. 508; Janney v. Spedden, 38 Mo. 395; Chauvin v. Wagner, 18 Mo. 554; Youse v. Norcum, 12 Mo. 564.

*A. Hamilton* and *S. Reber*, for respondent, cited: Reaume v. Chambers, 22 Mo. 53; Beale v. Lynn, 6 Har. & J. 53; Landes v. Perkins, 12 Mo. 254; Ryder v. Cohn, 37 Cal. 69; Ludlow's Heirs v. Wade, 5 Ohio, 500; Stevenson's Heirs v. McReary, 11 Smed. & M. 46 *et seq.*; Best on Presumptions, secs. 109-111; Rey v. Buckley, 7 East, 45; 1 C. & H. Ph. on Ev. (1868) 561, note 13; St. Mary's College v. Attorney General, 3 Jur. (N. S.) 675; 1 Greenl. on Ev. (1866), sec. 46; Williams v. Donald, 2 Head, 695; Griffin v. Sheffield, 38 Miss. 359; Williams v. Bass, 22 Vt. 364; Fox v. Thompson, 31 Pa. St. 172; Kaul v. Lawrence, 73 Penn. 416; McKeon v. Railroad Co., 43 Mo. 405; Taylor v. Dougherty, 1 Watts & S. 327; 1 Ter. Laws, 61, sec. 12; Cooley's Const. Lim. 406; Harvey v. Tyler, 2 Wall. 340; Dunbar v. Hallowell, 34 Ill. 169; Osgood v. Blackmore, 59 Ill. 261; Whiteside v. Barker, 7 Cal. 54; Peck v. Strauss, 33 *Ib.* 679, 685; Drake v. Duvenich, 45 Cal. 445, 463; Newman v. Cincinnati, 18 Ohio, 331; Knapp v. Abde, 10 Allen, 488; Marburg v. Madison, 1 Cranch, 161; Osborn v. The State, 7 Ohio, 214; 1 Whart. Penn. Dig. 801; Jewell v. Commonwealth, 22 Penn. 94; Davidson v. Slocum, 18 Pick. 466; Miller v. Handy, 40 Ill. 452; McNair v. Hunt, 5 Mo. 309.

BAKEWELL, J., delivered the opinion of the court.

This was a suit for dower. The plaintiff made out a *prima facie* case by proof of the title and seizin of the husband during the marriage, and of his death.

The defendants denied seizin of the husband, and also pleaded certain facts, by way of special defense, to show a bar by limitation. To this special defense plaintiff demurred, and her demurrer was sustained.

On the trial, to defeat the seizin of the husband, defendants endeavored to show that the land in question had been previously conveyed by Grégoire Sarpy, the father and ancestor of plaintiff's husband, to one Joseph Robidoux (under whom defendants claim), by sheriff's sale, in October, 1807, upon a judgment and order of sale rendered on May 22, 1807, in a suit of *Antoine V. Bouis* v. *Grégoire Sarpy*, for the foreclosure of a Spanish mortgage, given in 1803, which suit was commenced by filing a petition, on October 30, 1806, in the General Court of the Territory; and they produced in evidence a certified copy of the proceedings and judgment in said cause, and also a certified copy of an instrument purporting to be a deed, by the sheriff, of said land, as the property of Grégoire Sarpy, to the executor of Joseph Robidoux, deceased, in pursuance of said sale, dated November 13, 1809. Defendant also produced in evidence the record book of the Court of Common Pleas of the District of St. Louis, showing an entry made, on November 13, 1809, of an acknowledgment in open court, on that day, by said sheriff, of a deed for the land sold and therein described, to the executor of Joseph Robidoux, deceased. To the admission of the record of judgment in *Bouis* v. *Sarpy* plaintiff excepted, for the reason that said record did not show any legal evidence of the issue and service of process upon defendant therein, nor of his appearance in person or by attorney. Plaintiff also excepted to the admission of said record entry of an acknowledgment of the deed by the sheriff in open court,

without also producing the deed with such acknowledgment duly certified thereon by the clerk, under the seal of the court.

Plaintiff objected to the admission of the sheriff's deed, when produced, for the reason that the acknowledgment had not been certified thereon by the clerk, under the seal of the court taking the acknowledgment, as required by the statute then in force; and also for the reason that said judgment and order of sale were void for want of jurisdiction of defendant therein without service or appearance.

The sheriff's deed was admitted, subject to instructions, and, at the close of the case, the following instruction was given for the plaintiff, on the subject of this deed:

" The jury are instructed that, if they believe from the evidence that there was no seal to the clerk's certificate of acknowledgment of the sheriff's deed offered in evidence by defendants, then said deed was void and passed no title; and, further, that such defect cannot be supplied or cured by the record entry of such acknowledgment in open court."

An agreed statement of facts was read by plaintiff, in which it was admitted that the defendants, and those under whom they claim, had been in the actual adverse possession of the premises in question ever since January 1, 1824, claiming title thereto under the said sheriff's sale. Defendants also offered evidence tending to show that Grégoire Sarpy, from the time of said sale and deed down to his death, in 1824, had continued to reside in the town of St. Louis without bringing any suit to recover the possession of said land, or otherwise interfering with the possession thereof, and that the adverse possession had been with his knowledge.

The claim for the lot in question was presented before Recorder Hunt, in 1825, under the act of Congress of May 24, 1824, and the certificate of confirmation was issued on November 25, 1825, to Sarpy's legal representatives. Sarpy

was then dead; but Hempstead, under Robidoux, was then, and had long been, in possession, claiming the lot to the exclusion of all others.

It was admitted that all the title acquired by Robidoux was vested by derivative title in the defendants.

Defendants also offered in evidence a mortgage, dated October 6, 1807, from Joseph Robidoux to Antoine V. Bouis, of lot claimed by defendants to include the land in controversy, to secure a debt to said Bouis, due from said mortgagor, on which was indorsed a receipt, by Robidoux to Bouis, of 1,867 livres, in deer skins, on May 24, 1809. This instrument was objected to by plaintiff as irrelevant.

Defendants also offered a certified copy of proceedings in insolvency in the matter of Gregoire Sarpy, showing that he had been discharged from arrest for debt, upon the filing of an inventory dated January 12, 1808, in which the lot in question was not mentioned. This instrument was objected to by plaintiff as irrelevant.

The court gave all the declarations of law asked by the plaintiff, and refused all asked by the defendants except two.

The two instructions given for defendants are, in substance, the same, and declare the law to be " that the record of these proceedings read in evidence, in the case of *Bouis* v. *Sarpy*, in the General Court, together with the entry on the record of the Court of Common Pleas for the District of St. Louis, on November 13, 1809, of the acknowledgment by sheriff, in open court, of a deed for the land therein described, to the executor of Joseph Robidoux, furnishes evidence, if the possession of the land has ever since gone with the supposed deed, that there was a sale, by the sheriff, of the land of Grégoire Sarpy, under the judgment or order of sale in the case of *Bouis* v. *Sarpy*, above recited; that Joseph Robidoux was the purchaser thereat, and that the sheriff executed and delivered to the executor of Robidoux a deed for the land described in said certificate of acknowl-edgment."

Plaintiff excepted to the giving of these instructions.

It will not be necessary, for the purposes of this opinion, to set out the declarations of law given at the instance of plaintiff, further than to say that the court completely negatived any theory that evidence that those under whom defendants claim took possession of the land with Grégoire Sarpy's knowledge, and he made no sign, though continuing to reside in St. Louis till 1824, would prove a verbal sale from him, or estop him or his heirs, or be any defense to this action.

The cause was tried by the court without a jury, and a verdict and judgment entered for defendants. A motion for a new trial having been overruled, the cause is brought here by appeal.

There is no substantial error in the declarations of law given by the court in this case, and the verdict and judgment, being for the right party, will not be disturbed if it shall appear:

1. That the so-called record of the proceedings in *Bouis* v. *Sarpy* is admissible for any purpose.

2. That the court, in that case, had jurisdiction of the parties to the suit, and of the subject-matter.

3. That, no deed whatever appearing from the sheriff to Robidoux's executor, there exist record entries from which, coupled with long possession, a deed may be presumed.

4. That, though the paper offered in evidence as a certified copy of a record of an instrument of writing from the sheriff to Robidoux's executor does not show on its face any copy of a seal, it may be presumed, under all the circumstances of this case, that the original instrument, of whose record it purports to be a copy, had, when filed for record, the proper seal attached to the clerk's certificate.

We shall examine these points in their order, and, if they are solved, as we think they must be, in favor of defendants, it will be difficult to assert any valid reason for disturbing this judgment.

1. The evidence of the proceedings in *Bouis* v. *Sarpy* was a transcript of the entries in the record book of the General Court of Oyer and Terminer, and general jail delivery, held at the town of St. Louis, in the Territory of Louisiana, on Tuesday, October 28, 1806, together with the original papers in the case, all kept together. These are not marked "filed," as is the present custom, but they are produced from the files of the court by the present clerk of the Supreme Court, the actual custodian of these records. Accompanying this bundle of papers is a complete history of the case, engrossed by the clerk of that day in his own hand-writing, and indorsed, "record."

Joseph F. Baier, deputy clerk of the Supreme Court, swore that the papers produced by him in court were the original book of record entries and the original roll of papers on file in said cause in the clerk's office of the Supreme Court; that the paper purporting to be a draft of pleas, drawn up in form, was not marked "filed," nor entered in any record book of entries preserved in the office, nor signed nor certified by the clerk; that he had examined the records and files of said General Court from 1805 to 1809, and it appears to have been the custom of the clerks to make out a statement or history of the whole cause and put it on file. It was never marked "filed," but was indorsed "record," as in this case. In 1805 a regular record book was kept. There was no minute book among the records. This transcript or draft of pleas was not entered or copied into any record book now in the office of the clerk; nor was the "notice" marked "filed," but it was amongst the papers in the case as put and kept together. The draft of pleas and the indorsement of "record" thereon was in the handwriting of Joseph V. Garnier, then the clerk of said General Court, and the "letter of notice" and indorsement thereon was in his handwriting.

The record begins in solemn form:

"Pleas in the General Court of the Territory of Louisi-

ana before the judges of said Court at St. Louis of the term of May in the year of our Lord one thousand eight hundred and seven. Witness the Honorable John B. Lucas, Esquire, Presiding Judge of the said Court at St. Louis. J. V. Garnier Clerk. Be it remembered that heretofore to wit on 30th October at the Term of October A. D. 1806," etc.

It then sets forth that Antoine Vincent Bouis presented his petition against Grégoire Sarpy, and Palazie, his wife, and the original petition is set forth in French. Then follows the mortgage, at length, in the original Spanish; the notice to defendants to appear is then set out, and a continuance noted to next term. The record then sets forth that both parties, plaintiff and defendant, appeared in person at the next term, and the order of publication and of sale are noted, with full details of each, and also the entry of judgment and issuing of execution.

These records seem to be original and authorized minutes. They are in the custody of the proper officer, produced and proved by him, and, together with the file of papers accompanying them—including the execution, with the seal of the court and the signatures of the presiding judge and clerk, on which is indorsed the return of the sheriff, the original citation, and return upon it—seem to form an authentic and complete record of proceedings in this cause. Considering the state of society in this locality at the date of these proceedings, the radical changes which were then taking place in the form of legal proceedings, and all the surroundings of this case, we should not be justified in holding that, because we have before us no record signed by the presiding judge, as required by the act of October 1, 1804, in force when these proceedings were had, therefore there is no sufficient evidence of the facts set forth in these papers. On the contrary, we hold that everything found in the office of the clerk, with the papers and manifestly relating to the case, is a part of it; and all these entries and papers, including the citation, returns, pleadings,

and all other proceedings, constitute the record of this cause, and are admissible to prove what was done during its progress. *The State* v. *Logan*, 33 Md. 8 ; *Jewell* v. *The Commonwealth*, 22 Penn. 94.

2. The General Court was a court of general jurisdiction, and was in this case acting upon a subject-matter within the scope of its general powers. There is a presumption of law that it had jurisdiction over the parties. The citation issued in the cause is entitled of the case, with the words " General Court" for the style of the court. It sets forth that the petition has been filed by Bouis, and its general object ; it is addressed " to Grégoire Sarpy and wife," and signed " J. V. Garnier, clerk," and has the following indorsement, in the handwriting of the clerk : " General Court, *Vincent Bouy* v. *Grégoire Sarpy and wife.* On petition. Notice. Served 31st October, 1806. J. V. Garnier." We do not see that this rebuts the legal presumption in the case. There was no provision of law, at this time, that the original process should be a summons directed to the sheriff, and served fifteen days before the return day. It is true that all writs, process, and summons, issuing from the General Court, were then required to be signed by the clerk and *tested* by the presiding judge ; but it may well be maintained that the citation or rule to show cause in this case was not process within the terms of the statute. *Taylor* v. *Henry*, 2 Pick. 398. At any rate, the court, in the plenitude of its power over the matter, adopted this form of giving notice, sanctioned it, acted on it ; and it further appears from the recitals filed amongst the papers that, after the general imparlance entered in the cause, " before the judges of the General Court aforesaid came as well the said Vincent Bouis, by his attorney, as the said Grégoire Sarpy, in his own proper person," so that we have no doubt that the court had jurisdiction, But, had that matter not appeared, and had we considered the citation and returns insufficient, we could, if necessary to support

the judgment, have presumed, after the lapse of seventy years, the issue of any necessary process, and its service in due form.

3. Had no deed whatever appeared from the sheriff, we should not, in view of the record entry of the acknowledgment of the deed in open court, have considered ourselves warranted in overturning a sheriff's sale thus witnessed, and followed by possession for seventy years. *Newman* v. *Studley*, 5 Mo. 291.

4. But it is insisted by plaintiff that there is in the way a difficulty that cannot be overcome, and which *Newman* v. *Studley* does not tend to remove; that we have in evidence a deed, but a deed radically defective on its face; that the clerk's certificate of acknowledgment indorsed on the instrument is an essential part of it, and it is error to receive it without this indorsement. *Adams* v. *Buchanan*, 49 Mo. 64. It is true that there can be no presumption in favor of the validity of a title which, on its face, is manifestly illegal and void. *Reaume* v. *Chambers*, 22 Mo. 36. But is it clear that the deed of Sarpy, by the sheriff to Robidoux, offered in evidence, is illegal? It is made in proper form, contains the customary recitals, and is signed and sealed by the sheriff. The defect, if any, is in the clerk's certificate to the fact of acknowledgment by the sheriff in open court. This certificate is held, in Missouri, essential to the validity of the deed, although, after all, it is mere evidence of a fact which might have been capable of proof from the record of the court itself. We have the record in this case; but, under the law in Missouri, that is not sufficient evidence of the fact.

The original deed of the sheriff was not produced, but in its stead a certified copy of the record of that deed. In this certified copy the certificate of the clerk of the Court of Common Pleas to the sheriff's acknowledgment ends with these words: "Dated at St. Louis, the 14th November, 1809. Thomas F. Riddick."

Nothing is said about a seal in the *testatum* clause. But this does not prove that a seal was not there. It is not necessary to mention the seal when it is there ; it becomes necessary to mention it only when its place is supplied by a flourish of the pen, or something of that sort. The seal may, therefore, have been to the original deed. The clerk ought to have affixed it. It was his bounden duty to do so. The recorder may not have copied it. Why should he copy it ? It is most probable that the impression of the seal of the court was so faint upon the paper that no words and no device were legible, and that for that reason it was not copied, nor its presence indicated. As a matter of fact, the question not having been at that date judicially determined, the recorder, had he been a lawyer, could not have known the importance of this certificate and this seal. In *Griffin* v. *Sheffield*, 38 Miss. 359, it is held that the registry acts do not contemplate the recording of the impression of a seal. In *Williams* v. *Bass*, 22 Vt. 352, the court says that there can be no doubt upon the authorities that, where the deed has been followed by possession, the court should presume that the seal had been accidentally removed, or that the recorder, in recording it, had, through inadvertence, omitted to indicate on the record that the deed was sealed. Where a deed is produced, purporting to have been executed by signing and sealing and delivery, but the attesting witnesses can speak only to the fact of signing, it may be properly left to the jury to presume a sealing and delivery. *Bowling* v. *Patterson*, 9 C. & P. 570 ; 1 Peake, 146 ; 7 Taunt. 251.

Such presumptions as these are presumptions mixed of law and fact ; they are artificial presumptions ; and, where the inference is only partially approved by reason, the law, from motives of policy, attaches to the facts, which give rise to the presumption. an artificial effect beyond their natural tendency to produce belief. There can hardly be any stronger motive of policy than the desire to uphold

titles which have been followed by an undisturbed possession, under claim of absolute ownership, for the better part of a century, as in the case at bar. It is shocking to every sense of right and security of property that a possession of seventy years should be disturbed for want of a particular mode of proof of the existence of a fact which reason tells us must have occurred. Who doubts that Sarpy's mortgage was foreclosed ; that Sarpy knew it, and knew that all his legal title to this land was gone? The property was clearly sold, and the proceeds applied to pay his debt. He acquiesced until his death. Shall his legal representatives retain the land and the money both, in the name of their ancestor? No. If ever a case occurred in which every presumption would be indulged to support a title, this is one. *Ex diuturnitate temporis, omnia præsumuntur rite et solemniter esse acta.*

Whether, then, we consider the sheriff's deed as a legal nullity and so much blank paper, or whether we presume it to have been sealed, the effect is the same. In the first place the deed itself will be presumed, none having been shown ; in the second case we have a good deed and a perfect title. In any case judgment was properly entered for the defendant, and, with the assent of Judge LEWIS, it is affirmed. Judge GANTT, having been of counsel, does not sit.