JOHN W. DONALDSON ET AL., Defendants in Error, *v.*
MARTROM D. LEWIS, Plaintiff in Error.

June 17, 1879.

1. Mere absence without being heard from for a period less than seven years will not authorize the public administrator to take charge of the estate of the absentee, without other evidence tending to show his death.

2. If the administrator takes charge of the estate of an absent person, and in a proceeding to vacate the administration the absentee is shown to have been living within seven years, the administrator must rebut the presumption of life thus raised.

3. A debtor of the estate has a right to move in the Probate Court to vacate the administration upon the estate of a man alive within seven years, and not known to be dead.

4. An appeal lies from the action of the Probate Court refusing to revoke letters, or to vacate the administration where no letters are granted, as in the case of the public administrator.

ERROR to St. Louis Circuit Court.
*Affirmed.*

WAGNER, DYER & EMMONS, for plaintiff in error, cited: Wag. Stats., p. 122, sects. 8, 111; p. 123, sect. 13; p. 119, sect. 1; *Hancock* v. *Insurance Co.*, 62 Mo. 26; *Lancaster* v. *Insurance Co.*, 62 Mo. 121; *Rodrigas* v. *Savings Inst.*, 63 N. Y. 460; *Maguire* v. *Savings Inst.*, 62 Mo. 346; *Ex parte Snyder*, 64 Mo. 58.

M. B. JONAS, for defendants in error, cited: *Naylor* v. *Moffatt*, 29 Mo. 128; *Railroad Co.* v. *Swayne*, 26 Ind. 477; *Wilson* v. *Brown*, 21 Mo. 410; *Wolff* v. *Wohlein*, 32 Mo. 124; *McGee* v. *Thompson*, 39 Mo. 514; *Lancaster*

v. *Insurance Co.*, 62 Mo. 121 ; *Hancock* v. *Insurance Co.*, 62 Mo. 26 ; *Jochumsen* v. *Savings Bank*, 3 Allen, 87.

BAKEWELL, J., delivered the opinion of the court.

The public administrator of St. Louis County took charge of the estate of Weidle. Plaintiffs came into court and set forth that they were debtors of the estate, claimed that Weidle was still alive, and asked for a revocation of the authority of the administrator. The application was denied. On appeal of plaintiffs, the motion was tried by the court without a jury, and a judgment was rendered vacating the authority of the administrator to act. From this judgment the administrator appeals to this court.

The facts in evidence are substantially as follows :—

Weidle was book-keeper for Utterback & Co., in St. Louis, from 1868 until November, 1873, when he disappeared. During this period he had been divorced. He had no family, so far as known ; was prompt, shrewd, methodical, attentive to business, and a good mathematician. He was eccentric. During the panic in the autumn of 1873, his health was bad and he showed some symptoms of mental derangement. He was very much annoyed about a trifling mistake in his cash-account, and falsely supposed that his employers suspected him of dishonesty on that account. He was also uneasy lest the Boatmen's Savings Bank, an institution of high character, in which he had a deposit of about $200, should fail. He visited plaintiffs, Donaldson & Fraley, during this period, and left them some bonds for sale, which he took from his private drawer in the Safe Deposit Company's vaults for that purpose. He instructed Donaldson & Fraley, who were stock-brokers, to sell these bonds at a certain sum, to credit him with the money, and to let no one know of it. He complained to them of his head, and that he was losing the power to calculate. Three thousand dollars were received for the bonds and placed to his credit by Donaldson & Fraley.

When one of the brokers went to report the sale to him, he placed his finger on his lips, and said he would call and see them. He never called there again. He spoke of going to California. He drew out $148.65, his balance at the Boatmen's Savings Bank, on November 13; and a day or two before, $75 from his employers. This left $300 to his credit with them on salary account. They also owed him $1,000 for which he held their note since 1872. His bill at his hotel was paid on the day he left, and he left his trunks there. They contained merely old clothes. He was in the habit of carrying the key of the store and the key of the safe. The key of the store he left in the safe when he disappeared, but the key of the safe disappeared with him. In the safe was found a tin box belonging to him. When opened, it contained nothing but a deed of some land in Lincoln County, and the decree of divorce. His employers had the river dragged, and engaged the services of detectives, and finally advertised Weidle as a missing man. But nothing has ever been heard of him from that day to this.

The defendant, as public administrator of St. Louis County, took charge of the estate of Weidle, filing his notice as required by law, on a day not named in the bill of exceptions, but within four years of the disappearance of Weidle.

The plaintiffs in the present proceeding are the brokers named above and the employers of Weidle, and are his debtors to a considerable amount, as appears from what has been said.

1. It is contended that there is no provision of the law authorizing the debtors of an estate to move to revoke a grant of letters. We are aware of no express provision of law to that effect, nor do we think it necessary. It has been held that qualification under the statute protects the debtor in dealings with the administrator. *Roderigas* v. *Savings Inst.*, 63 N. Y. 460. Nevertheless, one cannot be bound to pay to one not really administrator of the estate; and if the debtor has the right not to pay to a pre-

tended and *prima facie* claimant, we do not know how he is to assert that right in a case of this kind unless by a proceeding of this nature. He must proceed by a direct attack. It would not be permitted to him to show, in an action by the administrator against him, that letters were improvidently granted. The debtor is interested in seeing that his creditor is paid, and it is no answer to say that he may safely pay another, and thus relieve himself from liability to his real creditor. He has such an interest in the matter, therefore, as to give him a standing in court.

It is said that no appeal lies from the action of the Probate Court. The law enumerates (Wag. Stats. 119, sect. 87) twelve cases in which appeals are allowed, and the section on the subject ends with this general clause : "And in all other cases where there shall be a final decision of any matter arising under the provisions of this law." One of the enumerated cases for an appeal is, " all orders revoking letters testamentary or of administration." We do not think that this is a case for the application of the maxim, *Expressio unius*, etc. It is not a question of implication. The right to appeal is expressly given, if this was a case of a final decision of the Probate Court ; and it clearly was so. Those interested in an estate may appeal from an order revoking the appointment of an administrator. They are surely no less concerned in an order refusing such revocation, where a proper case is presented ; and the Legislature which expressly granted the appeal in the one case, cannot be supposed to have intended to deny it in the other. Such a provision would be manifestly contrary to the spirit of our laws. It would be, in a case where it was claimed that letters were improvidently issued, to allow an appeal to those interested in affirming the letters, and to deny it to those who contest their validity. No letters are in fact granted to a public administrator, but his notice that he takes charge of an estate, filed in the clerk's office, constitutes him administrator of the particular estate, and is to be regarded as the equivalent of letters.

The public administrator has power, in certain cases, to take charge of the estate of deceased persons in his county. Wag. Stats. 122, sect. 8. He has no power to take charge of the estate of persons not dead. Letters granted on the estate of a man living, though believed to be dead, are void.

There is no *præsumptio juris* relative to the duration of life, insomuch that the Court of Queen's Bench refused to assume judicially that a man alive before the Norman Conquest was dead in the reign of George IV. The death of a person once shown to be alive is a matter of fact for a jury, and the *onus* is on him who asserts the death. The fact may be shown by presumptive evidence, however; and when no account can be given of the existence of a person, the presumption of the duration of life ceases at the expiration of seven years from the time when he was last known to be living. It is sufficient that he was absent from his particular State, without being heard from for seven consecutive years. Best on Presump. 45 Law Lib. 121 (190); 2 Steph. N. P. 1555; *Doe* v. *Jesson*, 6 East, 80; 1 Greenl. on Ev., pt. 1, chap. 4, sect. 41; *King* v. *Paddock*, 18 Johns. 141; *Newman* v. *Jenkins*, 10 Pick. 515. This is the common-law rule, a mixed presumption of law and fact, said to have been adopted by analogy to the statute (1 Jam. I., c. 11) relieving from the penalties of bigamy those remarrying after the absence of husband or wife beyond seas for more than seven years. Best, *ubi supra.*

Our statute, in affirmance of the common law in this respect, provides that a resident of the State absent for seven consecutive years shall be presumed to be dead, and if letters have been granted on his estate, all payments to his administrator shall be a bar to any claim of the absent person. Wag. Stats. 116, sect. 37. The statute on evidence also provides that, "if any person who shall have resided in this State go from, and do not return to, this State for seven successive years, he shall be presumed to be dead, in any case where his death shall come in question, unless

proof be made that he was alive within that time." Wag. Stats. 599, sect. 61.

There is no proof whatever that Weidle is dead. At the time the public administrator took charge of his estate he had been absent less than four years. There was, therefore, no presumption that he was dead. The presumption was that he was alive. That presumption can only be overcome by proof. Mere absence, unattended with other circumstances, is not sufficient. *Hancock* v. *Insurance Co.*, 62 Mo. 26. So far as any circumstances are shown, they are as consistent with life as with death.

It is held in *Lancaster* v. *Insurance Co.*, 62 Mo. 128, that letters of administration are *prima facie* evidence of the death of the person on whose estate they are issued, but that the *prima facie* case thus made is of the weakest kind. That, however, is a case of the actual grant of letters. The statute provides that every applicant for letters of administration shall make affidavit that the intestate died. There is then judicial action of the judge of probate upon some *prima facie* evidence. In the case of the public administrator there is no actual grant of letters, no application for them, and no affidavit of death required. The court does not act at all in the appointment. In England, the grant of letters is not held to make out a *prima facie* case of death; and in New York, Pennsylvania, and other States where it is so held, the law requires some preliminary examination and judicial determination of the fact of death by the Surrogate or Orphans' Court, or tribunal having probate jurisdiction.

We see no reason why the mere fact that the public administrator has taken charge of an estate should be held to establish a *prima facie* case of death, in a proceeding in which his right to administer is directly attacked, where the only issue is whether the alleged intestate is dead. If it be so, it does not appear why the public administrator may not take charge of the estate of every absconding debtor, and of every fugitive from justice, left abandoned in his

county. The fact that he takes charge of the estate is *prima facie* proof of death, and if the debtor is hiding from creditors or from justice, proof that the man is alive will probably be difficult to attain. In the present case, the applicants for a revocation of the letters having shown that the alleged intestate was alive within seven years, establish the presumption in favor of life, and some circumstance, beyond mere absence, tending to support the theory of death should be introduced to justify the act of taking charge of his estate by a public officer authorized to take charge of the estate of deceased persons only.

Whether payment to the administrator of a person supposed to be dead, but really alive, would be a bar to a second recovery, is a question that we need not determine. In New York, it was held by a divided court (*Roderigas* v. *Savings Inst.*, 63 N. Y. 460) that where letters were issued on due proof of death, and defendant in good faith, on demand of the administrator, paid over the deposit in its hands, no second action could be maintained to recover the deposit, though the depositor was not dead. In Massachusetts, in *Jochumsen* v. *Bank*, 3 Allen, 87, the court unanimously arrives at a precisely opposite conclusion. A decision either way, as Judge Earl says, could be confronted with some authority, and would meet with some logical difficulties. In our State, the statute (Wag. Stats. 111, sect. 37), whilst expressly providing that payment to the administrator of a person presumed to be dead, in consequence of seven years absence, is a bar to any other claim for the same demand, is silent as to the case of payment where no such presumption has obtained. The debtor who can show that his creditor was alive within that period of limitation would seem to have a right, in a proceeding of this character, to require some proof of the death of the alleged intestate. In the absence of any such proof, the Circuit Court sustained the motion to vacate the administration.

No reason appears for disturbing this judgment, and with the concurrence of all the judges it is affirmed.