McCALLISTER v. ROSS et al., Appellants.

Division One, March 14, 1900.

1. **Deed by Trustees of Church.** Where there are three trustees of a church, and one of them dies and no successor is elected in his stead, the surviving two have the same power to make a deed of trust on the church property that all three would have had had all three been living.

2. ————: CONSENT OF MEMBERSHIP: BURDEN: RATIFICATION: RECITAL IN DEED. A deed to three trustees of a Presbyterian church provided that they were to have power of alienation only with the consent of two-thirds of the membership for the time being. At a time of distress the plaintiff paid a debt which the congregation had contracted, and afterwards the two surviving trustees made a deed of trust for the amount of the debt, reciting therein that it was made by the authority and direction of the members. The congregation was then in existence and using the property, and did not cease to use it for a year later, and they all knew the mortgage had been made, its purpose and amount, and for nine years before its foreclosure acquiesced therein, and never mentioned it in any manner. *Held*,

  1. The burden of showing they did not consent thereto rests upon the defendants who challenged the truth of the recital that it was made by the authority of the membership.

  2. Although the evidence does not show that the mortgage was or was not consented to by the congregation, they ratified the same by their acquiescence, and are now estopped from asserting that it was not.

  3. The law presumes that the trustees performed the duty devolving upon them of seeing that two-thirds of the congregation consented to the making of the mortgage before they executed it.

  4. The heirs of the original grantor in the deed to the trustees can not be heard to object that the trustees acted without authority, because by that deed he covenanted that neither he nor his heirs "will hereafter claim any right to the premises, but they shall by these presents be forever barred."

Appeal from Franklin Circuit Court.—*Hon. Rudolph Hirzel,* Judge.

AFFIRMED.

*James Booth* and *Jesse H. Schaper* for appellants.

(1) As this is an action of ejectment, and the answer contained, among other defenses, a general denial, a recovery must be had, if at all, on the strength of complainant's title, and not on the weakness of those in possession. Large v. Fisher, 49 Mo. 307; Mather v. Wash, 107 Mo. 121; Mulherin v. Simpson, 124 Mo. 610. (2) The evidence in this case shows that the premises sued for were abandoned by the First Presbyterian church, and that it ceased to exist as such church organization prior to the date of the deed of trust given by John A. Collins and Andrew McCallister to respondent. It follows that the title to said premises, upon the discontinuance of the use for which said premises were conveyed to said church, reverted to and vested in the heirs of Albert Powell, the donor. Campbell v. The City of Kansas, 102 Mo. 326. (3) The trustees, Campbell, Collins and McCallister, being agents for the First Presbyterian church, by virtue of the provisions in the deed from Albert Powell, had no authority to longer act as such agents for that church after its regular organization ceased to exist. McRoberts v. Moudy, 19 Mo. App. 36; Venable v. Coffman, 2 W. Va. 320. (4) The conveyance from Powell to the trustees, named each of them, and after the death of one of them the others had no authority to completely execute the power contained in said conveyance. State to use v. Boone, 14 Mo. 254. (5) The original deed from Albert Powell to the trustees for the use of the First Presbyterian church directs how the premises therein described may be sold by said trustees, and hence any sale thereof by them in order to be valid must be strictly within the power contained in such

original deed. Heidelberg v. St. Francois Co., 100 Mo. 69. And the recital in the deed of trust to respondent that "John A. Collins and Andrew K. McCallister, surviving trustees of the First Presbyterian church, acting by the direction and authority of the members of said church," was binding upon no one but the trustees themselves. Sedgwick & Wait on Trial of Title to Land (2 Ed.), sec. 823; Price v. Courtney, 87 Mo. 387; Tiedeman on Real Property (1 Ed.), sec. 567.

*John W. Booth* for respondent.

(1) The deed of conveyance from Albert Powell is simply a conveyance to trustees for the use of the church. Nothing in the shape of a limitation of the use is to be found in the deed; nor is there anything in the deed which could be construed as requiring the premises to be used as a place of worship. The premises might have been sold, and the proceeds applied to any lawful purpose without, in any manner, infringing any right of Albert Powell, or any claiming under him. In short, his deed of bargain and sale, expressed to be made for a valuable consideration (even though nominal), divested him of all interests in the premises, and, therefore, the heirs of said Powell have no right to the possession of said premises, under any circumstances. Even if the First Presbyterian church had ceased to exist, as appellants unsuccessfully attempted to prove, the lot would not have reverted to Albert Powell or his heirs. "The doctrine of reversion applies only to the instance of a donation for a charity, and not to that of a vendor or grantor of land in fee for a valuable consideration paid. In the latter case there can never be a reverter of the estate to the vendor or his heirs, though the use to which it was granted should wholly fail." Gibson v. Armstrong, 7 B. Mon. 489. The deed conveying the lot to the old church trustees expresses

solely a money consideration.   McRoberts v. Moudy, 19 Mo.
App. 26.   (2)  Appellants have no standing to question
the authority of the surviving trustees to make the deed
of trust which was given to secure respondent's debt.   This
is so on the same principle applied in the case of Steadman
v. Hayes, 80 Mo. 319.   (3)  Appellants have no right to
litigate the question whether or not two-thirds of the mem-
bers of the church concurred in the conveyance made to
secure plaintiff's debt.   No persons other than the members
of the church were interested in that question, and all the
church members having acquiesced in the conveyance for
more than ten years, it can never be successfully raised.
Such acquiescence is the most satisfactory evidence that the
conveyance was made with the concurrence of all the church
members.

MARSHALL, J.—Ejectment to recover lot 62 in block
14 as laid out on the original plat of the town of Washington,
Mo.

On the 27th of March, 1878, Albert Powell, for a
consideration of one dollar, conveyed the premises in con-
troversy to Masters Campbell, John A. Collins and Andrew
McCallister, in trust for the use and benefit of the First
Presbyterian church of the town of Washington.   The deed
recited that: "they, the said trustees and their suc-
cessors, to have power of alienation in respect to the real
estate herein conveyed only with the concurrence of two-
thirds of the membership of said church for the time being."
The deed also provided: "So that neither the said party of
the first part nor his heirs, nor any other person or persons
for him or in his name or behalf shall or will hereafter
claim or demand any right to the aforesaid premises or any
part thereof but that they and every of them shall by these
presents be excluded and forever barred."
Thereafter a church was built on the lot, and the con-

gregation became involved in debt to the extent of three hundred dollars for furnishing the church and providing benches therein. The plaintiff, at the request of the church congregation, paid this debt, and to secure him therefor Collins and McCallister, as surviving trustees (Campbell having died and no successor having been appointed), on the 4th of February, 1888, executed, and delivered to plaintiff a note for three hundred dollars and secured it by a deed of trust upon the lot and the church building, and they recited in the deed that it was given by direction and authority of the members of the First Presbyterian church of the town of Washington.

After the time the church was built the congregation worshipped therein until about 1881, when the pastor, Mr. Watson, left them. Thereafter the church, which was known as the Southern Presbyterian church, joined the other Presbyterian church, known as the Northern Presbyterian church, and secured the services of another pastor. The two congregations worshipped in the two churches alternately until some time in 1889, since which time no services were held in this church. Some of its members united with the other Presbyterian church, some joined other churches, some removed from Washington, and some dropped out. All the time, however, Mr. Collins, one of the trustees, kept the keys of the church, and upon application to and leave from him, this church was used in 1895 for a small church entertainment.

Albert Powell died, leaving as his heirs Mary Ross, Mattie B. Iman, Joseph C. Powell and William B. Powell. In 1884, Joseph and William Powell conveyed an undivided half interest in the property to Mary Ross and George H. Ross. In 1897, the sheriff of Franklin county acting as trustee, as authorized by the deed of trust to McCallister, foreclosed the deed of trust, and the plaintiff, the *cestui que trust* in the deed, became the purchaser of the property

for the price of one hundred dollars. The testimony shows that the property was worth from one hundred and fifty to two hundred and fifty dollars. The plaintiff then brought this action against George H. Ross, who was in possession. Mary Ross and Mattie B. Iman and her husband were, upon their motion, made parties defendant. The answer alleges the conveyance to trustees in 1878; that in 1884 the premises "ceased and have become impossible to be devoted to the particular object and purpose of said gift by said Powell, on the part of the First Presbyterian church of the town of Washington;" the death of Powell; their heirship; the conveyance to Mr. and Mrs. Ross by Joseph and William Powell of their interest; the execution of the note and deed of trust to plaintiff; the sale under the deed of trust to the plaintiff, and then avers that the congregation had abandoned the church several years before the deed of trust was executed; that the deed of trust was void for want of consideration, and that Collins and McCallister executed it to defeat the rights of the heirs of Powell, and without authority from the congregation and as surviving trustees they had no power to execute it, and the defendants ask a cancellation of the deed of trust, and that the title be vested in them. The case was thus converted into one in equity, and was so tried by the circuit court. That court entered judgment for the plaintiff, and defendants appealed. Thus the plaintiff claims under the deed of trust, while the defendants claim as heirs of Powell, under an alleged abandonment by the congregation and a failure of the purposes of the grant, and therefore a reversion to the heirs of the grantor.

If the deed of trust to the plaintiff was valid, then no subsequent abandonment by the church could affect the plaintiff's rights or defeat his title acquired under that deed. On the other hand, if plaintiff's deed of trust was invalid or insufficient to pass the title, then it is wholly immaterial in this case whether there was an abandonment or reversion or

not, and as neither the church nor the trustees are parties to this suit, the court would have no power in this proceeding to declare a reversion and vest the title in the defendants as prayed by them.

There is absolutely no evidence to support the allegation that the note and deed of trust were without consideration. The contrary is true. They were given for exactly the amount the church owed the plaintiff, and are therefore honest and *bona fide*.

The particular infirmities attributed to the deed of trust by the defendants are, first, the want of power in the two surviving trustees to make it, and, second, the lack of consent of two-thirds of the members of the church, without which consent the deed to the trustees gave them no power of alienation.

As to the first objection, it is sufficient to say that at common law, where one or more of several trustees, died or resigned the trust devolved upon the surviving trustee or trustees, and it was held in Oxley Stave Co. v. Butler Co., 121 Mo. l. c. 638, that this has been the rule in Missouri ever since the decision of SCOTT, J., in Stewart v. Pettus, 10 Mo. 755, and that it is not affected by our statute abolishing joint tenancy in certain cases. The same rule is laid down in Hill on Trustees, marg. page 303, and in 1 Perry on Trusts (5 Ed.), sec. 343. The surviving trustees in this case, therefore, had full power to execute the deed of trust.

The evidence is conflicting, indefinite and vague as to whether two-thirds of the members of the church consented to the execution of the deed of trust. The burden of proving that they did not do so rested upon the defendants who challenged the truth of the statement in the deed of trust that it was executed by the authority and direction of the members of that church. The utmost that can be said of the evidence on this question is that the witnesses did not remember whether it was directed to be done at a church

meeting or not, that a meeting was called to see if they could
raise the money, but if the deed of trust was directed to be
executed, they were either not present or had forgotten the
fact. They all admitted they knew it had been done, and
that the plaintiff had come to the relief of the church in
time of need and paid off a pressing debt that had been
contracted for necessaries, and that he had waited for years
for his money before he received this security. The deed
of trust was executed on the 4th of February, 1888, and the
congregation was then undoubtedly in existence, and using
the property, and did not cease to use it until some time in
1889. The members of the church ratified the giving of
the deed of trust by their acquiescence for over nine years
before it was foreclosed, and even up to this time the record
does not show that they have ever disaffirmed it in any way
or questioned it in any manner. The law presumes, until
the contrary is shown, that every officer performs his duties.
[State ex rel. v. Mastin, 103 Mo. 508; St. Joseph to use v.
Farrell, 106 Mo. 437; Leonard v. Sparks, 117 Mo. 103.]
It also presumes that every one, even though not an official,
performs his engagements and duties, social as well as busi-
ness: Mathias v. O'Neill, 94 Mo. 520 (in favor of a book-
keeper); Lenox v. Harrison, 88 Mo. 491 (in favor of an ad-
ministrator); Agan v. Shannon, 103 Mo. 661 (in favor of an
administrator); State ex rel v. Bank of Neosho, 120 Mo.
161; Bluedorn v. Railroad, 108 Mo. 439 (in favor of a
switchman on a railroad); Chouteau v. Railroad, 122 Mo.
375 (in favor of a railroad company). And after a long
lapse of time such presumptions may be indulged to supply
deficiencies in a chain of title. [Dingee v. Kearney, 2 Mo.
App. 515; Dickens v. Miller, 12 Mo. App. 408.]

However it is useless to pursue the inquiry. The con-
veyance by the trustees recited that it was made by the di-
rection and authority of the members of the church. Those
members are now estopped to deny that recital, and the de-

fendants can not be heard to object that the trustees acted without such authority, for by the terms of their father's conveyance to the trustees they are "excluded and forever barred" of all claim or right to the premises. The judgment of the circuit court was right and is therefore affirmed. All concur, except *Robinson, J.*, absent.