CHOUTEAU, *Appellant*, v. THE MISSOURI PACIFIC RAILWAY COMPANY.

In Banc, May 28, 1894.

1. **Railroad:** ACQUISITION OF LAND: PRESUMPTION. Where a railroad company was not authorized by its charter to receive a conveyance of land for other than railroad purposes, the law will presume that it complied with its duty in that regard.  (Per SHERWOOD, J., BRACE and BURGESS, JJ., *concurring*.)

2. ———: ———: ———.  The actual appropriation of land for such purposes by the successor of the company that acquired it, soon after such acquisition and continuously thereafter, affords a reasonable presumption that it was acquired for those purposes.  (Per SHERWOOD, J., BRACE and BURGESS, JJ., *concurring*.)

3. ———: ———: FEE: EASEMENT.  Although the act of 1849 (Laws, p. 219) incorporating the Pacific Railroad Company, apparently vested in the company the fee simple of land taken by it through process of condemnation, the whole act, taken together, provided only for having the land either relinquished or taken for the purposes of constructing, maintaining and operating a railroad and the company, under its provisions, acquired a mere easement and not the fee.  (Per SHERWOOD, J., BRACE, and BURGESS, JJ., *concurring*.)

4. **Contract**: CONSTRUCTION. What the law will imply in an express contract is as much a part and parcel of it and as much to be considered in construing it as if stated in such contract in direct terms. (Per SHERWOOD, J., BRACE and BURGESS, JJ., *concurring*.)

5. **Dower**: EASEMENT. A widow is not dowable in an easement. (Per SHERWOOD, J., BRACE and BURGESS, JJ., *concurring*.)

6. **Railroad**: EASEMENT: REVERSION. A railroad company which has acquired an easment in land for railroad purposes can not dispose of it in detached and fractional portions, but only as a whole to another corporation for those uses and those alone for which it was acquired. An attempt to divert the subject of the grant to other purposes would result in reversion to the last owner of the premises. (Per SHERWOOD, J., BRACE and BURGESS, JJ., *concurring*.)    ·

7. ————; EMINENT DOMAIN: RELINQUISHMENT OF TITLE: CONDEMNATION: OWNER. Where the charter of a railroad company uses the word "owner" when providing for voluntary relinquishment or condemnation of property for railroad purposes, such owner is the only party, with the exception of the curator of minors, with whom the company need treat in negotiating a purchase or bring before the court in the exercise of the power of eminent domain. (Per SHERWOOD, J., BRACE, and BURGESS, JJ., *concurring*.)

8. **Eminent Domain**: CONDEMNATION PROCEEDINGS: DOWER. The wife's inchoate right of dower may be extinguished by condemnation proceedings against her husband, under the Missouri Statutes. (Per SHERWOOD, and BARCLAY, JJ., BRACE and BURGESS, JJ., *concurring*.)

9. ————: ————: ————. A conveyance of a right of way, by a husband, to a company authorized to take land for public use, would extinguish the inchoate right of dower of his wife, though she did not join in the conveyance. The same effect would follow where the husband conveyed the land in fee to a third person who then transferred it to the corporation, entitled to, and which in fact did, subject the land to public use as a railway. (Per SHERWOOD and BARCLAY, JJ., BRACE and BURGESS, JJ., *concurring*.)

10. ————: ————: ————. When the estate of the husband is lawfully acquired and subjected to public use, the wife retains no inchoate right of dower in the property while the public use continues. (Per SHERWOOD and BARCLAY, JJ., BRACE and BURGESS, JJ., *concurring*.)

11. **Voluntary Performance of Compulsory Act, Legal Effect of**. A voluntary performance of an act to which a party is compelled by law should have the same effect as if produced by compulsion. (Per SHERWOOD J., BRACE and BURGESS, JJ., *concurring*.)

12. **Statute**: CONSTRUCTION. What is implied in a statute is as much a part of it as what is expressed. (Per SHERWOOD J., BRACE and BURGESS, JJ., *concurring*.)  .

13. **Eminent Domain**: POWER OF LEGISLATURE. Within the limitations of the constitution it is competent for the legislature to prescribe the mode and manner in which the sovereign power of eminent domain shall be exercised. (Per BARCLAY, J., BRACE, J., *concurring*.)

14. **Statute**: CONSTRUCTION. The effects and consequences of a proposed construction of a law may properly be considered in arriving at the probable intent of the lawmaking body. (Per BARCLAY, J., BRACE, J., *concurring*.)

15. **Dower**: PROPERTY: CONSTITUTIONAL GUARANTY. The right to dower in Missouri is statutory, and, during the life of the husband, the inchoate right thereto is not such an estate as is beyond legislative control. It is not "property" within the meaning of the constitutional guaranties for the protection of property. (Per BARCLAY, J., BRACE, J., *concurring*.)

16. ———: PARTNERSHIP: BURIAL GROUND. No dower may be recovered in land owned for partnership objects, or devoted to burial purposes. (Per BARCLAY, J., BRACE, J., *concurring*.)

*Appeal from Jackson Circuit Court.*—HON JAMES GIBSON, Judge.

AFFIRMED.

Action for assignment of dower. The plaintiff and Pierre M. Chouteau were married in 1849; he died in 1885, and during the marriage was seized in fee of the undivided one-half of some twenty lots situated in Kansas City, Missouri. In June, 1850, he, being seized of the fee in the premises, conveyed without warranty his half interest in the property to Berenice F. Chouteau, but his wife did not join in the conveyance. In July, 1853, Berenice F. Chouteau conveyed the same to Joseph Guinotte, and in March, 1867, conveyed in fee the property in question by general warranty deed, without any conditions or restrictions, to the Pacific Railroad Company, of which the present defendant is the successor. The defendant company has occupied with its tracks the real estate in question since 1869. Demand for the assignment of dower was made by plaintiff, but refused by defendant.

The answer of the defendant, so far as necessary to quote it, is as follows:

"Defendant admits that it is in possession of the said real estate, and claims to own the same. Defendant, further answering, says that, by an act of the legislature of the state of Missouri, approved March 12, 1849, and by an act amendatory of said act, approved March 1, 1851, a railroad called the Pacific Railroad was incorporated and authorized to construct from any point in the city of St. Louis, by any route the said company may deem advantageous, to any point on the western line of said state, which said company might select, and for that purpose might hold the land, consisting of its right of way, and for turnouts, embankments and excavations, necessary for the preservation of its road, and also for the erection and maintenance of depots, landing places, or wharves, engine houses, offices or machine shops, warehouses and wood and water stations. That, by the provisions of said act, and the act amendatory thereof, the said Pacific Railroad was authorized to hold, use and possess and enjoy the fee in the land, as aforesaid, and take voluntary relinquishments of the right of way for said road, and the necessary depots and water stations. That pursuant to the power conferred by said acts, the said Pacific Railroad did locate and construct a railroad from the city of St. Louis aforesaid to the western boundary of the state of Missouri, which has been used and maintained as a railroad, from the time of its construction to the present.

"That in the year 1867, the said Pacific Railroad obtained by purchase, from the then owner of the said real estate mentioned in the petition, for its right of way, and for the use of said railroad as a common carrier of passengers and freight, and from the time of its construction to the present, it has been used by the said

railroad and its successor as a public highway, and as such, still is so used.

"Defendant further avers that it became, by purchase, the successor of the Pacific Railroad, and is entitled to, and owns and is possessed of, all its property, real and personal, rights and interests and franchises, of which said estate, and the right to use the same, form a part. Wherefore, defendant says that plaintiff is not entitled to the judgment as prayed in her petition," etc.

To this answer a general denial was filed.

Section 1 of the act incorporating the Pacific Railroad, contains this clause: "May take, hold, use, possess and enjoy the fee simple or other title in and to any real estate, and may sell and dispose of the same." Laws 1849, p. 219.

Section 7 of the same act provides that:

"Said company shall have full power to survey, mark locate, and construct a railroad, etc., etc., * * * and for that purpose may hold a strip of land, not exceeding one hundred feet wide, and may also hold sufficient land for the construction of depots, warehouses and water stations."

Section 9 of the amendatory act of 1851, so far amends section 7, just quoted, and somewhat enlarges the privileges conferred by the original section, so that in addition to the one hundred foot strip, the company could take more land where necessary for turnouts, embankments, or excavations, etc., etc. Laws of 1851, p. 272.

And the original act gave the Pacific Railroad power as to the reception of voluntary relinquishments of the right of way of said road, etc., and in case of a refusal to relinquish the right of way gave the right to the company to condemn the same, etc., etc., and providing that upon the report of the commissions being

approved, an order should be made vesting in said company "the fee simple title of the land" thus condemned.

And by section 9 of the same act, provision is made that:

"If any owner of any tract of land through which said railroad shall pass shall refuse to relinquish the right of way," etc., then application shall be made to the judge of the circuit, and "notice of such application to said judge shall be given to the owner of such land five days," etc., * * * and, "if such owner be a nonresident, he may be served," etc.

Section 12 of the original act provided that "said company shall have general power to use, manage, control and enjoy said railroad." And no authority whatever was given said Pacific Railroad Company, to acquire or hold real estate for any purpose other than those connected with the construction, maintenance and operation of its railroad.

And section 17 of the original act gave power to the state at the end of a certain period, "to purchase said railroad."

All the facts aforesaid were either admitted or else established on the trial.

The defendant company then offered in evidence the acts already quoted incorporating its predecessor. This was all the evidence offered, and thereupon the trial court gave judgment for the defendant; and the plaintiff appeals.

*Ed G. Taylor* for appellant.

(1) *First.* By the deed of McDaniel to Guinotte, Magis & Co. and Pierre M. Chouteau & Co., April 26, 1850, plaintiff's husband became seized of the undivided half of the real estate in question. *Arthur v.*

*Weston*, 22 Mo. 378; *Keck v. Fisher*, 58 Mo. 532; *Rines v. Mansfield*, 96 Mo. 394. *Second.* And with no further showing, plaintiff would have her dower rights. *Willet v. Brown*, 65 Mo. 138; *Carlisle's Adm'rs v. Mulhern*, 19 Mo. 56; *Buchan v. Sumner*, 2 Barb. Ch. 198; *Campbell v. Campbell*, 30 N. J. Eq. 415; *Simpson v. Leech*, 86 Ill. 286; *Lang v. Waring*, 25 Ala. 625; *Brewer v. Browne*, 68 Ala. 210; *Foster's Appeal*, 74 Pa. St. 391; *Bopp v. Fox*, 63 Ill. 540; *Howard v. Priest*, 5 Metc. 582; *Wheatly v. Calhoun*, 12 Leigh (Va.), 264; *Shafer's App.*, 106 Pa. St. 49; *Providence v. Bullock*, 14 R. I. 353. *Third.* This, with proof of marriage and death of husband, made a *prima facie* case for plaintiff. *Gentry v. Woodson*, 10 Mo. 224; 2 *Scribner on Dower*, 212, *et seq.* (2) The real estate not having been acquired by defendant or its predecessor by the right of eminent domain, the fact of its being used as a right of way does not deprive plaintiff of her dower right. *Venable v. Railroad*, 19 S. W. Rep. 45; *Nye v. Railroad*, 113 Mass. 277; R. S. 1889, sec. 4525. (3) This case is to be distinguished from *Venable v. Railroad*, 112 Mo. 103. If the railroad acquired the land by purchase under a deed without restrictions, it took a fee simple title to the soil. Laws, 1849, sec. 1, p. 220; R. S. 1845, chap. 34, p. 231, sec. 1; G. S. 1865, chap. 62, p. 326, sec. 1; *Co. v. Clark*, 32 Mo. 305; *Whitehead v. Vineyard*, 50 Mo. 30; 4 Am. and Eng. Encyclopedia of Law, pp. 230–233; *Amer. & F. Ch. U. v. Yount*, 101 U. S. 352; *Jones v. Habersham*, 107 U. S. 174; *Myers v. Croft*, 13 Wall. (U. S.) 174. When land is sold to a railroad company with special conditions as to its use, if the company ceases to operate its road and forfeits its franchise, yet if it has conveyed its right of way before forfeiture declared, the purchaser takes a good title. *Morrill v. Railroad*, 96 Mo. 144.

*Elijah Robinson* for respondent.

(1)   The courts of this country seem to have uniformly held whenever the question has come before them, that when lands are appropriated by the exercise of eminent domain, or what is equivalent to it, the dedication of land to public use, the dower of the wife is defeated. *Gwinn v. City,* 3 Ohio, 24; 17 American Decisions, 576; *Jackson v. Edwards,* 7 p. 386; 1 Scribner on Dower, 550; Dillon on Municipal Corporations, 459; 1 Washburn Real Estate [4 Ed.] 269; *Duncan v. Terre Haute,* 85 Ind. 104.   By the terms of the constitution, railroads are public highways.   Sec. 14, art. 12, const. Mo.   It follows necessarily that land taken by a railroad company for a right of way is appropriated to a public use.   Upon principle, no good reason can be assigned why there should be any distinction between cases where land has been acquired by condemnation proceedings and by voluntary conveyance of the then owner.   The special act of the legislature under which the Pacific Railway Company was organized, gave it no authority whatever to acquire or hold real estate for any purpose other than those connected with the construction, maintenance and operation of its railroad. Sess. Acts, 1849, secs. 7, 8, 9, p. 220; Acts, 1851, sec. 9, p. 268.   The Missouri Pacific Railway Company was organized under the general railway law of the state contained in the general statutes of 1865 and acquired by purchase all of the property, rights and franchises of the Pacific Railway Co.   Neither of these companies was authorized to take and hold real estate for any other purpose than those of the construction, maintenance and operation of its road; when they ceased to use it for such purposes it would revert to the original owner. When the title to this land was acquired, and when it was first appropriated to public use, the plaintiff's hus-

band was living and her dower right was *inchoate;* and she then had no interest in the land which was susceptible of compensation, and her husband's grantee was properly treated as the owner of the entire estate. *French v. Lord,* 69 Maine, 541; *Moore v. Mayor,* 8 N. Y. 113; *Gwinn v. City,* 3 Ohio, 24. The conclusion arrived at by this court in the *Venable case,* is based on the idea that a distinction ought to be made between cases of lands appropriated for roads, streets, markets, etc., and cases where the appropriation was for use by a railroad corporation as a right of way. This position is certainly not tenable. Constitution of Missouri; *Walther v. Waner,* 25 Mo. 277; *Dickey v. Tennison,* 27 Mo. 373; *Deitrich v. Murdock,* 42 Mo. 279; *Railroad v. Muder,* 49 Mo. 165; *Lackland v. Railroad,* 31 Mo. 180; Lewis on Eminent Domain, sec. 170, and cases there cited. (2) No instructions were given or refused, and there is nothing to indicate to this court upon what the decision of the trial court was based. The real estate in question was conveyed to P. M. Chouteau & Co., and the deed itself was evidence tending to show that there was such a firm. Plaintiff claims that P. M. Chouteau was doing business under the name of P. M. Chouteau & Co., but on that question the evidence was conflicting and not very satisfactory. There is nothing for this court to review. *Easley v. Elliott,* 43 Mo. 289; *Altum v. Arnold,* 27 Mo. 264; *Harbison v. School District,* 89 Mo. 187; *Mead v. Spaulding,* 94 Mo. 47.

SHERWOOD, J.—Upon the foregoing facts the only question raised by the record is, whether the plaintiff is dowable in the litigated property.

Quite recently in this court the subject has been discussed at large, whether a widow was entitled to dower in land which her husband alone had, for a consideration of $1 never paid, conveyed to a railroad company

for a right of way; and, though at first it was held in division number one of this court that she was thus dowable (*Venable v. Railroad*, 19 S. W. Rep. 45), yet, upon transfer of that cause to court *in banc*, it was determined, after an extensive examination of the authorities, and after full consideration, that she was not thus dowable. In this conclusion all the members of this court, but one, concurred. *Venable v. Railroad*, 112 Mo. 103; 20 S. W. Rep. 493.

The only divergence observable between the case cited and the one at bar, is that in the latter the conveyance in ordinary form, was made by the husband in 1850 to Berenice F. Chouteau for a consideration of $1, and she in 1853 conveyed the same to Guinotte by general warranty for a consideration of $2,059.75, who in 1867, and for a consideration of $5,000, conveyed the same to the Pacific Railroad Company, its successors and assigns forever, by general warranty deed. And the question presented is, whether the difference noted between the cases should cause a conclusion to be reached in the present case different from that in the former.

In other words: Does the fact that a husband conveys a piece of land *directly* to a railroad company, for railroad purposes, prevent his widow from being endowed in the land thus conveyed, while on the other hand, if the husband conveys to a railroad company through mesne conveyances, a piece of land for similar purposes, his widow is entitled to be endowed.

That the land in the present instance was conveyed by Guinotte to the original company for railroad purposes, is apparent from several considerations: *First*, that such company was not authorized by its charter to receive a conveyance of land, except for those purposes; *second*, the law will presume that the company complied with its duty in this regard; and, *third*, the

actual appropriation to such purposes, by the successor of the original company so soon after its acquisition, and continuously thereafter, affords a reasonable presumption that it was acquired for those purposes. That there is no appreciable distinction between the two cases in the matter of result, is made plain when we consider the legal effect of the grant made by Guinotte to the Pacific Railroad Company, the meaning of the term "*owner*" employed in the charter of that company; and, *lastly*, the inchoate nature of the interest of Mrs. Chouteau in the property at the time of its purchase by the company.

In the first place, although the law of its organization *apparently* vests in the original company the "*fee simple title*" of the land taken by that company through process of condemnation, yet, when the whole act is taken under review, it becomes at once apparent that such is not its meaning. The evident object and scope of the act was simply to have the land either relinquished or taken for the *purposes of constructing, maintaining and operating a railroad.*

In other words, the original company took a mere *easement* in the land, and not the *fee*. Precisely this view of the point was taken by this court in *Kellogg v. Malin*, 50 Mo. 496, when, having under consideration the charter of the "Platte County Railroad Company" (Laws of 1853, p. 355, *et seq.*), where terms identical with those employed in the charter of the Pacific Railroad Company are used.

In that case, WAGNER, J., said: "It is true that, in speaking of the title which the company acquire, the legislature here uses the term 'fee simple;' but did it contemplate a fee simple according to the technical legal meaning of that term? * * * The use is vested in the public, but the reversionary title still

continues in the owner of the soil. In my opinion, notwithstanding the language used, nothing more than an easement passed to the road, giving it perpetual and continuous title so long as it used the land for the purpose for which it was taken; but, when that use was abandoned, then it would revert back to the owner of the premises."

The like view has been announced in Minnesota as to the effect of a statute of that state which professedly authorized the acquisition of an "*absolute estate in fee simple*," whereas, by the constitution of that state, the condemning company was only authorized to acquire "a franchise of way," and it was held that the effect of the constitutional provision was to so limit the effect of the statute as to permit the company to acquire, not the fee simple title, but only an easement. *Scott v. Railroad*, 21 Minn. 322.

These cases proceed on the familiar principle that what the law will imply in an express contract is as much a part and parcel of it, and as much to be dwelt on in construing it, as if stated in such contract in direct terms. *Whincup v. Hughes*, L. R. 6 C. P. 78; Bishop on Contr. [Enlarged Ed.], secs. 241, 253, 439. In this case, then, the law itself incorporated into the deed made by Guinotte those conditions and restrictions which the charter of the company intended should govern, and limited the uses to which the land granted should be applied.

It necessarily results from these authorities that the interest which the Pacific Railroad Company derived from Guinotte was but an *easement*, *a right of way*, *and not a title* (*Union Depot Co. v. Frederick*, 117 Mo. 138, per MACFARLANE, J., GANTT, J., concurring); and consequently the widow of a husband formerly seized of the premises, could have *no dower therein*—unless it be true, which is not true, that a widow is

Chouteau v. The Mo. Pac. R'y Co.

dowable in an *easement*. Mills on Eminent Domain
[2 Ed.], sec. 71, and cases cited; Tiedeman on Real
Property [Enlarged Ed.], sec. 116; 1 Wash. on Real
Property [5 Ed.], 203.

This point alone is decisive of this case, and is a
sufficient answer to the contention of plaintiff's coun-
sel as to the construction put by this court on *Nye v.
Railroad*, 113 Mass. 277, when *Venable's case, supra,*
was last before us.

In *Nye's case* the railway company obtained the
*entire fee*, by reason of the deed made, "just as a nat-
ural person would do," and the corporation could con-
vey the land thus obtained, when no longer necessary
for its purposes, to whomsoever it would. Not so in
the case at bar; no fee was obtained only in form and
outward semblance; not in fact or in law. And what-
ever right was acquired by the defendant company or
its predecessor could not have been disposed of, except
*as a whole*, and not in detached or fractional portions;
and when disposed of could only have been disposed
of to another railroad corporation for those uses, and
those alone, for which the original grant was made.
The attempt to divert the subject of the grant to other
purposes would result in reversion to the last owner of
the premises. Pierce on Railroads, 158.

In the second place, the charter uses the term
"*owner*," when providing for voluntary relinquishment
or condemnation of property. With the exception of
the curator of minors, he was the only party known to
the law with whom the company need treat with the
view of purchasing, or, failing in such negotiation, need
bring before the judge or court in order to take the
land by virtue of the power of eminent domain.

On this point, a recent author of acknowledged
merit says: "The word '*owners*' is generally employed
in the statutes as describing the persons who must be

made parties to proceedings to establish roads or streets. In order to carry into effect the purpose of the statute and to give just force to the provisions of the constitution, the term *'owners'* should be construed to mean all who have an estate in the land and whose interests appear of record. This would require that all who have vested estates should be made parties, but would not apply to those who have mere liens or inchoate interests. Under the operation of the rule it would not be necessary to make a married woman having an inchoate interest in the lands of her husband a party to the proceeding. The principle upon which the doctrine that a wife need not be made a party rests, is, that the right to dower, or to an estate in the lands of the husband, is a right created by law and not by contract, and that it is not vested until the death of the husband. Elliott on Roads and Streets, 235.

Now, in this case, at the time of the transfer by Guinotte, to the Pacific Railroad Company, he was the owner of, and represented, the fee, and compensation to him was all that was necessary. This is the rule, where the *husband* then being the owner conveys the fee, and it is difficult to see why the same rule should not apply where the conveyance is made by any *other owner* representing the fee, since in either case, the inchoate interest or possibility of the wife is not taken into account, the law possessing no scales and owning no machinery whereby such possibilities and expectancies can be weighed or estimated. Mills on Eminent Domain [2 Ed.], sec. 71, and cases cited.

If the Pacific Railroad Company had been compelled to resort to proceedings *in invitum* to obtain the right of way, *Guinotte would have been the only party that could have been brought into court, or against whose land a judgment of condemnation could have been rendered*; this being the case, it is not easy to see why his

deed should not be as effective in conveying a right of way or easement to the Pacific Railroad Company as such, divested of all inchoate rights and interests as would result from the deed of a husband in similar circumstances; and, that such is the operation of the deed of a husband, we have already declared in *Venable's case, supra.* Indeed, "there seems to be no good reason, why a voluntary performance of an act to which the party is compelled by law, should not have the same effect as if produced by compulsion." *Potter v. Wheeler,* 13 Mass. *loc. cit.* 507. Again, it was competent for the legislature, in express terms, to have destroyed all inchoate rights and interests in condemnation proceedings; this is attested by abundant authority; but, by singling out the *"owner"* of the property as the only party necessary to a deed of relinquishment or to condemnation proceedings, the legislative body has impliedly said that the rights of no other party need be relinquished or obtained. Such an implication necessarily excludes all inchoate interests, possibilities and expectancies; and, "what is implied in a statute is as much a part of it as what is expressed." *United States v. Babbit,* 1 Black, 55; *Gelpcke v. Dubuque,* 1 Wall. 220; *Stradling v. Morgan,* Plowd. 199; 2 Bishop on Married Women, sec. 63; Bishop on Contracts, sec. 241; *State ex rel. v. Board,* 108 Mo. 235; 18 S. W. Rep. *loc. cit.* 784.

A similar construction was long since placed by this court upon our statute respecting partition, which does not mention the wife as a party, and it has been ruled that she was not a necessary party. *Lee v. Lindell,* 22 Mo. 202; *Hinds v. Stevens,* 45 Mo. 209. And a like ruling was made that the wife need not be made a party to the foreclosure of a mortgage executed by the husband and wife. *Riddick v. Walsh,* 15 Mo. 519.

On the dissent of GANTT, P. J., this cause was transferred to court *in banc*, and, on re-argument, BRACE and BURGESS, JJ., concur in affirming the judgment; BARCLAY, J., reaches the same result in a separate opinion. BLACK, C. J., MACFARLANE and GANTT, JJ., dissent.

BARCLAY, J.—The appeal is from a judgment for defendant upon a state of facts, which is thus outlined by plaintiff's counsel in this court:

"This is a suit for dower in an undivided half of certain lots in Kansas City, Missouri, by the widow of Pierre M. Chouteau. Plaintiff was married to Chouteau December 20, 1849. On April 26, 1850, a tract of land including said lots was sold and conveyed by the then owner, in undivided halves, to grantees described in the deed as 'to Guinotte, Magis & Company one undivided half, and Pierre M. Chouteau & Co. the other undivided half.' Afterwards (in 1850) Pierre M. Chouteau, by an ordinary warranty deed, in his own name, and without being joined by his wife, conveyed said real estate to Berenice F. Chouteau; and she afterwards (in 1853) conveyed to Joseph Guinotte; and in 1867 Joseph Guinotte, by general warranty deed, without conditions as to use, conveyed the lots in controversy to the Pacific Railroad, and the said railroad and its successor, the present defendant, have, since that time, held the same and occupied them with their tracks. The plaintiff's husband died in August, 1885, and in 1887 she made demand on the defendant for her dower in said real estate, and, the same being refused, brought this suit."

We do not consider essential any fuller statement of the evidence than the above, in the view we take of the rules of law governing this litigation.

We shall assume, without discussion, the preliminary proposition advanced by plaintiff, that the conveyance to Chouteau & Co. should be considered as though the grantee were Mr. Chouteau alone, treating the presence of the partnership name as immaterial to the present controversy.

We then reach the real gist of the dispute, namely, whether, on the facts stated, plaintiff is entitled to be endowed of the said estate, formerly owned by her husband, but now in use by defendant as part of its railway track, under the title above described.

The constitution and laws of Missouri contain some very definite directions touching the mode of exerting the sovereign power of eminent domain.

Railways are declared public highways. Const. 1875, art. 12, sec. 14.

The procedure by which such highways may be established is defined with considerable particularity.

Among the provisions on this subject are the following, which, in substance, have been in force since 1866, viz: "If the proceedings seek to affect the lands of persons under guardianship, the guardians must be made parties defendant; if the land of married women, their husbands must be made parties defendant. * * * It shall not be necessary to make any persons party defendant in respect to their ownership, unless they are either in actual possession of the premises to be affected, claiming title, or have a title to the premises appearing of record upon the proper records of the county." (R. S. 1889, sec. 2734).

These statements furnish a statutory definition of the word "owners," which is found in that part of the same section, requiring the owners of the land to be made parties defendant to the petition for condemnation.

The same section, by very clear implication,

sanctions the acquisition of private property for public use as part of a railway, by means of private treaty with the owner, supplementing, in this particular, the general power expressly conferred on such corporations for the same purpose by section 2543 (R. S. 1889).

Within the limitations of the organic law, it is undoubtedly competent for the legislative branch of the government to prescribe the mode and manner in which the sovereign power of eminent domain shall be exerted.

Under the statute above quoted, there is very little room to question that the inchoate right of a wife to dower would be extinguished by proper condemnation proceedings against her husband alone. And it has been recently held, by six judges of the court *in banc*, after very thorough consideration, that a conveyance to the railway company of a right of way by the husband would defeat the inchoate right of dower of his wife in the subject-matter of that conveyance. *Venable v. Wabash, etc., R'y Co.* (1892), 112 Mo. 103.

The facts of the case at bar, however, are not identical with those considered in the Venable case and it is claimed that the difference between the cases is such as to prevent the application of the principles then announced.

If the deed of the husband, when made directly to the company, is effective to extinguish the inchoate right of dower by reason of the terms of our statutory law on the subject, what is the proper meaning to be placed on that law in respect to such a state of facts as we have now in view?

That law provides no machinery or mode to acquire by condemnation an inchoate right of dower, such as

plaintiff had at the time of the deed by her husband to Guinotte.

There was no need to make her husband a party to proceedings to condemn at any time afterwards, for he had parted with his interest.

Can it be possible that the intent of the law, as applied to such a state of facts, is that a railroad corporation, desiring to subject property to public use, can neither acquire the inchoate right of dower by paying for it in appropriate legal proceedings, nor yet defeat its force when developed later into a vested interest at the death of the husband?

It has been frequently said in recent years that we may properly consider the effects and consequences of any proposed construction of a law, as an aid in ascertaining the probable intention of the lawgiver as expressed in it.

Applying that rule to elucidate the statute law on this subject, we discover that one consequence of adopting the construction proposed by plaintiff would be to practically preclude the acquisition for public use of such interests as inchoate dower by any form of legal procedure.

Did the legislature so intend?

The terms of the law regulating the exercise of that most necessary and useful power in civilized government, the power of eminent domain, in Missouri, indicate that when the estate of the husband is acquired for, and subjected to, public use, the wife retains no contingent right to dower in the property so devoted to public purposes.

In this view of the subject, it is wholly immaterial what may be the duration of the estate of the corporation invoking the power of eminent domain. So long as the property is lawfully in use for public purposes,

no right to dower can be asserted to interfere with the paramount right of the public.

It only remains to inquire whether it was competent and constitutional for the legislature to declare, as we think it has done in effect, that, in acquiring the estate of a husband in land subject to public use, the inchoate right of dower therein is suspended, during the existence of the public use.

The right to dower in Missouri is defined by statute. During the lifetime of the husband the inchoate right thereto is not such an interest or estate as is beyond the control of the legislative power. *Weaver v. Gregg* (1856), 6 Ohio St. 549.

It is a contingent right, not a vested estate. *Lee v. Lindell* (1855), 22 Mo. 202; *Holley v. Glover* (1892), 36 S. C. 404; *Moore v. Mayor* (1853), 8 N. Y. 110.

The supreme court of the United States has distinctly held that it is not "property" within the meaning of the constitutional guaranties for the protection of property. *Randall v. Kreiger* (1874), 23 Wall. 148. A different opinion was expressed at one time here [*Williams v. Courtney* (1883), 77 Mo. 587], but that opinion has been already disapproved, and should no longer be followed.

The right to dower is shaped and limited by positive law, enlightened by the principles of construction developed at the common, and, later english law. It is settled in this state, for instance, that no dower may rightly be demanded in lands owned for partnership purposes in certain circumstances. *Young v. Thrasher* (1892), 115 Mo. 222.

While, by statute, burial grounds can not be subjected to claims for dower. (R. S. 1889, sec. 937.)

It has even been held, in other jurisdictions, competent for the legislature to totally abolish the right to

dower, so far as such legislation bears upon estates which have not vested at the time of its enactment. *Black v. Elkhorn Mining Co.* (1892), 52 Fed. Rep. 859; *Richards v. Bellingham Bay Land Co.* (1893), 54 Fed. Rep. 209.

These rulings, as well as the general rules of law applicable to inchoate or contingent rights (such as that to dower now in view), plainly establish that it is within the power of the legislative branch of the government to declare that the right to dower shall not be asserted as against the sovereign right of eminent domain exerted by authority of the state.

This was the purport of the decision in *Venable v. Wabash, etc., R'y Co.*, 112 Mo. 103, and the case at bar is not distinguishable on principle from that.

We adhere to that case, believing it to express the true meaning of the existing law of Missouri on this subject.

We conclude that, under the provisions of our own statutes, it is plainly apparent that no right of dower, such as plaintiff claims, can be asserted against property duly acquired by deed, or by condemnation, and actually devoted to the public use; and that such a regulation of, or limitation upon, the inchoate right of dower is valid, and not in violation of any provision of the organic law.

It results that the judgment of the trial court should be affirmed; and a majority of the court so orders. Judge BRACE concurs in this opinion. SHERWOOD and BURGESS, JJ., concur for the reasons stated in the opinion of the former, now refiled (reported, 22 S. W. Rep. 458). BLACK, C. J., and GANTT and MACFARLANE, JJ., dissent.