Dianne J. MILLER and Robert N. Miller, and Lisa M. Shanika, For Themselves and as Representatives of a Class of Similarly Situated Persons, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 03–2489L.

United States Court of Federal Claims.

Aug. 31, 2005.

Mark F. Hearne, II, St. Louis, MO, for plaintiffs. J. Robert Sears, of counsel.

William J. Shapiro, with whom was Kelly A. Johnson, Acting Assistant Attorney General, for defendant. Evelyn Kitay, Surface Transportation Board, of counsel.

## OPINION

BRUGGINK, Judge.

Plaintiffs are landowners in St. Louis County, Missouri, who allege that their property has been taken as a result of the conversion of the Kirkwood Industrial Lead of the Carondelet Branch of the Pacific Railroad[1] right-of-way to a public use trail pursuant to the National Trails Systems Act, 16 U.S.C. § 1247(d) (2000). We certified a class on April 20, 2004. Pending are the parties' cross-motions for partial summary judgment regarding two of the seventy-six claimants. Defendant asks dismissal of the two claimants on the grounds that the railroad held title to the property in question in fee simple. Plaintiffs contend that the railroad acquired only an easement over the two tracts and, therefore, that they continue to hold the fee, subject now to a new easement for which the government must pay. The matter has been fully briefed and orally argued. For reasons set out below, we conclude that the railroad obtained a fee.

## BACKGROUND

In order to frame the specific issue raised by the cross motions, the history of this tract has to be examined. Collectively, plaintiffs allege they own property spanning approximately two miles of the former railroad right-of-way. On April 27, 1872, the railroad filed a condemnation action in the Circuit Court of St. Louis County. The condemnation action encompassed several properties then owned by John R. Triplett or Mary Walker, including the two at issue here—Lot 39 and Lot 55. The landowners whose land was subject to the condemnation refused to relinquish the right-of-way over their land to the railroad. On June 8, 1872, the court recog-

nized the railroad's authority to take the land and appointed three commissioners to assess damages. The commissioners issued a report on September 23, 1872, containing their assessment of damages and awards for the landowners.

Regarding Lot 39, the commissioners' report assessed damages in the amount of $1,016.00, to be awarded to owners John R. Triplett or Mary Walker. Regarding Lot 55, also owned by John R. Triplett or Mary Walker, the commissioners' report assessed damages in the amount of $400.00. The total amount that the parties were to receive for the condemnation of their land was $1,416.00.

Attached to the commissioners' report are several receipts showing payments made to some of the other property owners who were party to the condemnation proceeding. Scattered throughout the report is marginalia indicating that a deed was executed to certain property owners subject to the condemnation. There is no evidence of a formal receipt showing payment made to Triplett or Walker. Next to the portion of the report declaring the assessment value of both parcels owned by Triplett or Walker, the word "Deed" is written.

On November 1, 1872, around the time when some landowners were receiving compensation by check pursuant to the condemnation, numerous grantors executed a deed ("Triplett deed") to the railroad. Triplett was one of the grantors of the deed. The property encompassed in the deed—Lots 39 and 55—was land that was subject to the condemnation proceeding. The deed recited consideration in the amount of $1,416.00, the same amount of compensation that the commissioners assessed for Lots 39 and 55. The relevant language of the deed is as follows:

> Witnesseth that the said [Landowners] in consideration of [$1,416] to them paid by the said [railroad] the receipt of which is hereby acknowledged do by these presents grant bargain and sell convey and confirm unto the [railroad] all that part of lots Nos. 39 and 55 of East Kirkwood in the County

---

1. Missouri Pacific Railroad succeeded Pacific Railroad. For consistency purposes, we refer to the entity as the "railroad."

of St. Louis County State of Missouri as is covered by the Roadway of the Carondelet Branch of the Pacific Railroad.

The habendum clause states:

To have and to hold the same together with all the rights immunities privileges and appurtenances to the same belonging to the said [railroad] and to its heirs and assigns forever and said [Landowners] hereby release the said [railroad] from all claims to damages caused by the construction of said road over the said lots.

The deed further states that the wives of the landowners "relinquished their dower in the real estate therein mentioned freely and without compensation or undue influence of their said husbands." The deed was recorded at the City Recorder's Office in St. Louis County, Missouri on March 27, 1874.

*Procedural History*

Plaintiffs filed their complaint on October 23, 2003, alleging a taking of their property as a result of the conversion of the railroad to a public-use trail. On August 20, 2004, after certification of the class, we directed that a Claim Book be filed by September 20, 2004. Each class member was to submit information, including whether they were aware of any agreement between a railroad and themselves, or their predecessors, pertaining to the property at issue. We ordered the government to file any objections that could be determined upon review of the Entries of Appearance and attached documents by November 22, 2004. The entries of appearance for the disputed claims included no documents responsive to this request; they did not include a copy of, or reference to, the Triplett Deed. On November 22, 2004, the government filed a Notice of No Challenges Based on Entries of Appearance, and expressly reserved the right to later file any

objections that were not apparent from the face of the entries and attached documents.

On April 15, 2005, we stayed this case for most purposes pending our resolution of the statute of limitations issue in *Illig v. United States*, No. 98–934L,[2] a case also involving conversion of a railroad easement to a recreational trail along the Carondelet Branch in Missouri. That issue has now been resolved.[3]

DISCUSSION

If the railroad acquired fee simple with respect to the parcels here at issue, plaintiffs have no takings claim. Only if they can establish that the railroad obtained easements can plaintiffs' claims regarding these two parcels stand. As we explained in *Hubbert v. United States*, 58 Fed.Cl. 613 (2003),

In order to establish a valid claim, any particular landowner must establish that full use of the fee underlying the railroad's easement would have been unimpaired but for operation of the Trails Act. If the railroad held a fee interest in the right-of-way, or if the abutting landowner held less than the fee, no such right of control would arise, and consequently, no claim will lie.

58 Fed.Cl. at 614–15 (citations omitted).

■ In order to determine whether the railroad acquired an easement or fee simple, we must determine the manner through which the railroad acquired its interest. For example, in Missouri, railroads can acquire only easements through condemnation. *See, e.g., Brown v. Weare*, 348 Mo. 135, 152 S.W.2d 649, 652 (1941) (explaining that "the law is settled in this state that where a railroad acquires a right of way ... by condemnation, ... the railroad takes but a mere easement over the land and not the fee") (citing Mo. Const. art. II, § 21); *Coates &*

---

2. *Miller v. United States*, No. 03–2489 (Fed.Cl. Apr. 15, 2005).

3. In *Illig*, we held that in light of the Federal Circuit's decision in *Caldwell v. United States*, 391 F.3d 1226 (Fed.Cir.2004), plaintiffs' Rails-to-Trails takings claim accrued when the ICC issued a NITU. *Illig v. United States*, 67 Fed.Cl. 47, 53 (2005). Because plaintiffs' complaint in *Illig* was filed more than six years after the ICC issued a NITU, we dismissed plaintiffs' claims for

lack of jurisdiction. *Id.* at 56. Although timeliness for purposes of jurisdiction is not an issue in this case, *Illig* still has implications. The ICC issued a NITU on August 18, 1999. The railroad and trail user reached an agreement on July 26, 2001. Pursuant to our decision in *Illig*, the date of taking is August 18, 1999. However, we used the former date in giving notice to potential class members. Accordingly, a revised notice will be dispersed and class membership may be altered.

*Hopkins Realty Co. v. Kansas City Terminal Ry. Co.*, 328 Mo. 1118, 43 S.W.2d 817, 823 (1931) (*en banc*) (explaining that "generally the condemnor takes only an easement in land taken for railroad tracks without the consent of the owner"); *Kellogg v. Malin*, 50 Mo. 496, 1872 WL 7966 (1872). Accordingly, if the railroad acquired its interest in the parcels of land through the condemnation proceeding, plaintiffs' claim with respect to these two parcels can proceed. If, on the other hand, the railroad acquired its interest by deed, then we must consider more closely the interest conveyed through that instrument.

*How Did the Railroad Acquire Its Interest?*

Defendant argues that the condemnation proceeding was never finalized with respect to the owners of the subject property. It argues that execution of the deed was a wholly separate transaction that operated independent of the condemnation. In some respects, the outcome, which turns ultimately on state law, depends on the effect in Missouri of the filing of the condemnation proceeding.

■ In Missouri, the date of taking in the case of a condemnation proceeding is the date on which payment is made by the condemnor to the court or parties, or if it does not pay, the time of trial. *E.g., City of Cottleville v. Am. Topsoil, Inc.*, 998 S.W.2d 114, 118 (Mo.Ct.App.1999). *But see State ex rel. Highway Comm'n v. Galloway*, 292 S.W.2d 904, 909 (Mo.Ct.App.1956) (finding that trial court could interpret Missouri statutes to say that the taking occurred when the Commissioners' Report was filed—but only for the purposes of determining for what period plaintiff was entitled to interest, not for determining when the city obtained the land.). It is on this date that the condemnor obtains title and its right to possess the land. *City of St. Louis v. Oakley*, 354 Mo. 124, 188 S.W.2d 820, 821 (1945) (*en banc*); *St. Louis, Keokuk & Northwestern Ry. Co. v. Clark*, 121 Mo. 169, 25 S.W. 906, 907 (1894) (holding "that the appropriation of the land is complete when the amount of damage awarded

by the commissioners is paid and possession is taken"); *City of Cottleville*, 998 S.W.2d at 118. For this reason it becomes important that there is no proof that the condemnation proceeding was consummated.

■ Plaintiffs cite *Preseault v. United States*, 100 F.3d 1525 (Fed.Cir.1996), to support their argument that the deed should take on the character of a condemnation proceeding. There, a warranty deed was executed between the landowner and the railroad following the initiation of condemnation proceedings, and the survey and location of the right-of-way over a parcel of land in Vermont. *Id.* at 1535. The deed purported to convey a fee simple. *Id.* Vermont law deemed the survey and location of the road as constituting a taking. *Id.* at 1536 (discussing *Troy & Boston R.R. v. Potter*, 42 Vt. 265, 1869 WL 3839 (1869)). Under the laws of Vermont in effect at the time of the conveyance, when the railroad took land pursuant to its incorporating statute granting to it the power of eminent domain, the railroad acquired only an easement. *Id.* (discussing *Hill v. W. Vt. R.R.*, 32 Vt. 68, 1859 WL 5446 (1859)). The Court concluded that because the railroad's survey and location "retained its eminent domain flavor," it acquired only an easement, despite the subsequent deed. *Preseault*, 100 F.3d at 1537. *But cf. Hash v. United States*, 403 F.3d 1308, 1322 (Fed. Cir.2005) (affirming the district court's finding that the railroad's entrance upon and use of the land prior to execution of the deed from Idaho landowner should not be analogized to a condemnation proceeding and that deed should be interpreted on its own).

The *Preseault* decision relied on Vermont law—notably the *Hill* and *Troy* decisions. Under that precedent, the "act of survey and location is the operative determinant, and not the particular form of transfer ..." *Preseault*, 100 F.3d at 1537. Plaintiffs point to no comparable Missouri law that would incline us to reach a similar conclusion, permitting us to ignore the deed. We are left with the fact of an unambiguous deed and the fact that there is no evidence that the railroad paid into court the award amount.[4] Indeed,

---

4. Plaintiffs also recite that "[t]here is no sugges-

tion that the Pacific Railroad had physically en-

the parties agree that the Triplett Deed is the relevant document in the chain of title.

The parties also present arguments as to the purpose and function of the deed. Plaintiffs allege that the only reasonable interpretation is that the deed was executed to effectuate the payment calculated in the Commissioners' Report. Based on the facts that the consideration stated in the deed is the exact amount calculated by the commissioners and that the deed was executed around the time when other property owners were receiving checks for their condemnation awards, plaintiffs claim that the only logical conclusion is that the deed merely consummated the condemnation. Plaintiffs claim that it does not make sense for the property owners to protest the forfeiture of any interest in their land and then voluntarily grant fee title to the Railroad.

Defendant insists that the reverse assumption is true, namely, that the fact that a separate deed was thought to be necessary suggests that the owners conveyed a larger estate than what the railroad would have received through the condemnation effort. Defendant argues that there was no point in conveying through a deed an easement that the Railroad could have obtained without a deed.[5]

We believe neither assumption is inevitable or necessary. Plaintiffs may be correct to the extent that the deed was prompted in some sense by the condemnation, but we do not believe, absent some better evidence, that it can be assumed to be identical in effect to a condemnation. Otherwise, why not wait for the previously-calculated check? We can agree with defendant to the extent that something other than condemnation was contemplated, but we decline to go so far as assume that more than an easement was intended. We simply state what the record indicates. The condemnation proceeding was never finalized with respect to the parcels at issue here. Instead the parties executed a deed. Consequently, the railroad did not acquire its interest in the property via condemnation. We find the deed to be the determinative instrument.

*What Property Interest Did the Railroad Acquire?*

In determining the interest conveyed, the deed must be interpreted in light of the law in effect at the time of its execution. *See Hash v. United States,* 403 F.3d 1308, 1315 (Fed.Cir.2005) (explaining that, despite current contrary public policy, "the property rights of these early landowners are governed by the law in effect at the time they acquired their land"); *Preseault v. United States,* 100 F.3d 1525, 1534 (Fed.Cir. 1996) (holding that determination of interests conveyed in nineteenth-century transfers "requires a close examination of the conveying instruments, read in light of the common law and statutes of Vermont then in effect"). Plaintiffs allege that in 1872 "under Missouri caselaw in place at the time of the Triplett Deed, every acquisition of land by a railroad creates an easement only, regardless of the language used." Pls.' Memo at 6–7. They contend that this condition made it impossible for a railroad to acquire any interest greater than an easement until the Missouri Supreme Court issued its decision in *Coates & Hopkins Realty Co. v. Kansas City Terminal Ry. Co.,* 328 Mo. 1118, 43 S.W.2d 817 (1931) (*en banc*). Plaintiffs argue that "the *Coates* court recognized that under existing Missouri law 'a railroad corporation may not, upon a valuable consideration, by agreement and purchase and by a deed in fee, take the fee in land'." Pls' Memo at 7. We disagree.

Plaintiffs rely on *Chouteau v. Mo. Pac. Ry. Co.,* 122 Mo. 375, 22 S.W. 458 (1893). In *Chouteau,* the landowner conveyed his interest in property to the Pacific Railroad Company for a consideration of $5,000.00 by general warranty deed dated 1867. *Id.* at 460.

tered or occupied the Triplett's property.... [T]he government offers no basis to believe the railroad had occupied the Triplett property." Ps' Memo. at 15.

5. In response to this argument, plaintiffs allege that the deed was necessary because the condemnation proceeding involved only two property owners. The deed lists ten grantors. Plaintiffs claim that additional parties were added to the deed in order to release all those persons, including trustees, with any sort of property interest in the land. Even if that were true, such thoroughness is fully consistent with construction of the instrument as granting a fee.

In an opinion issued in 1893, the Missouri Supreme Court determined that the railroad's charter language authorized it to receive a conveyance of land only for railroad purposes, and that accordingly, the railroad acquired only an easement from the landowner.[6] *Id.* The following year, the case was reheard *en banc* and the Court issued a new opinion on May 28, 1894. The second opinion affirmed the earlier decision, but on entirely different grounds; the second opinion avoided entirely the issue of whether the railroad acquired an easement or a fee. Only two judges concurred with the original holding—that the railroad lacked authority to obtain any interest greater than an easement.

Plaintiffs argue that the *Coates* court later recognized the existence in *Chouteau* of a rule that railroads could never acquire more than an easement, irrespective of the granting instrument. They allege that the *Coates* court reconsidered this rule and changed the law, thus authorizing railroads to acquire fee title via deed. Plaintiffs misread *Coates*. After acknowledging one party's reliance on *Chouteau*, the Court stated that the "record of the [*Chouteau*] case does not develop a majority opinion, for at most three judges only concur in the easement rule." 43 S.W.2d at 823. The Court further explained: "However, *so far as said cases rule*, even though dicta, that a railroad corporation may not, upon a valuable consideration, by agreement and purchase and by a deed in fee, take the fee in land so purchased, they are overruled." 43 S.W.2d at 823 (emphasis added). *Coates*, therefore, does not "recognize" the existence of the rule that plaintiffs discern in the original *Chouteau* decision. Rather, *Coates* makes plain that the law was never to that effect. Instead, a railroad could obtain fee title via deed so long as there was no language limiting the interest conveyed and upon a showing of valuable consideration. 43 S.W.2d at 823 (finding that series of deeds dated between 1868 and 1876 conveyed fee title to railroads); *see also Hubbert,* 58 Fed. Cl. at 616 (holding that deeds dated 1884

conveyed fee title to railroad because granted for valuable consideration and without limiting language); *Bayless v. Gonz,* 684 S.W.2d 512, 513 (Mo.Ct.App.1985) (deed dated 1869 conveyed to railroad fee title in strips of land adjacent to condemned right-of-way). The railroad thus had the ability to acquire fee title when the landowners executed their deed in 1872.

*Deed Interpretation*

■ Having concluded that the deed controls, and having rejected plaintiffs' argument that the law at the time foreclosed a fee, we nevertheless recognize a preference in Missouri law for construing ambiguous instruments to railroads as easements. *See Moore v. United States,* 58 Fed.Cl. 134, 136 (2003); *Brown v. Weare,* 348 Mo. 135, 152 S.W.2d 649 (1941). For a deed to convey a fee rather than an easement, the intent must be clear from the language in the deed. The instrument must reflect the intent to convey a fee, for valuable consideration and with no limitation on the quantum of interest. *See Moore,* 58 Fed.Cl. at 136; *Nigro v. Ashley,* 690 S.W.2d 410, 417 (Mo.Ct.App.1984).

■ The granting language of the Triplett deed is as follows:

Witnesseth that the said [Landowners] in consideration of [$1,416] to them paid by the said [railroad] the receipt of which is hereby acknowledged do by these presents grant bargain and sell convey and confirm unto the [railroad] all that part of lots Nos. 39 and 55 of East Kirkwood in the County of St. Louis County State of Missouri as is covered by the Roadway of the Carondelet Branch of the Pacific Railroad.

This language is consistent with an intent to convey a fee. Nor is there any limiting language such as, for a "right of way," or for "railroad purposes." *See, e.g., Brown v. Weare,* 348 Mo. 135, 152 S.W.2d 649 (1941); *Jordan v. Stallings,* 911 S.W.2d 653, 658 (Mo.Ct.App.1995).

The habendum clause states:

---

**6.** In reaching this conclusion, the Court relied on its previous decision in *Kellogg v. Malin,* 50 Mo. 496 (1872). In that case, despite language in the railroad's charter authorizing it to take fee simple, the Court notes that, *in the context of con-* *demnation,* nothing more than an easement may pass to the railroad. *Id.* at 500. The *Kellogg* decision was limited to the impossibility of the railroad acquiring fee simple in a condemnation proceeding.

To have and to hold the same together with all the rights immunities privileges and appurtenances to the same belonging to the said [railroad] and to its heirs and assigns forever and said [Landowners] hereby release the said [railroad] from all claims to damages caused by the construction of said road over the said lots.

Once again, the language is consistent with the intent to convey the full fee. It is noticeably different, for example, from the Eads deed, executed contemporaneously and under similar circumstances, where the habendum clause contains the limitation, "or so long as the same is used for the purposes of a right of way for said railroad."

Plaintiffs focus on the last phrase of the habendum clause, "release the said [railroad] from all claims to damages caused by the construction of said road," and conclude that this indicates an intent to grant only a right of way. Plaintiffs are correct that the use of the term "road" can be significant. As we explain above, if the grant is for a "road" or "right of way," or if there is a purpose clause using that language, an easement is assumed. Here, however, the term "road" appears only in connection with a limitation of liability. It is not descriptive of the grant.

With respect to consideration, the fact that $1416.00 is the same amount as proposed in the condemnation proceeding for what amounted to an easement does not make the sum nominal in exchange for a fee. The sum was plainly not token, particularly in 1872. *See Hubbert,* 58 Fed.Cl. at 616 ($75.00 and $125.00 were valuable consideration for deeds); *see also Brown,* 152 S.W.2d at 654 ($1.00 was merely nominal consideration); *G.M. Morris Boat Co., Inc. v. Bishop,* 631 S.W.2d 84 (Mo.App., 1982) (same).

## CONCLUSION

The railroad obtained a fee. We therefore grant defendant's motion for partial summary judgment and deny plaintiffs' motion.[7]

7. We reject plaintiffs' contention that defendant is barred from asserting its present position with respect to the Triplett deed because of its statements in *Illig.* Although *Illig* also involved the Carondelet Branch, the precise parcels at issue here were not controlled by that litigation. The Triplett deed was not at issue there. Nor has the

The claims with respect to Lot 39 and Lot 55 are dismissed.

government waived its objections to these claims by failing to include them in the November 22, 2004 "Notice of No Challenges Based on Entris of Appearance." That notice conditioned waiver of objections to then-known documents or discrepancies apparent from the face of an appearance.